## GULF, COLORADO & SANTA FE RAILWAY COMPANY V.
## A. M. CLAY.

### Decided February 11, 1902.

**1.—Railway Company—Fenced Right of Way—Crossing—Cattle Drowned—Evidence.**

Evidence held to sustain a finding that plaintiff's live stock were drowned in his pasture by an overflow because of the negligent failure of the railway company to construct necessary openings through its fenced right of way and across its track.

**2.—Same—Unprecedented Flood.**

Where it appeared that plaintiff's stock would have been drowned in an ordinary overflow, it did not affect defendant's liability that the flood was of an unprecedented character.

**3.—Same—Contributory Negligence.**

Evidence held not to show plaintiff guilty of contributory negligence in failing to save his stock by cutting the fence after the raise of the water.

**4.—Same—Evidence—"Cattle"—Habit—Common Knowledge.**

Where the witnesses testified that it was the habit of cattle, in cases of overflow, to go to the hills and high grounds (cut off by defendant's fence), the word "cattle" is to be construed in its broadest sense and as including horses and mules, and the habit of these animals in this respect may also be regarded as matter of common knowledge, not requiring proof.

**5.—Same—Contributory Negligence.**

Plaintiff was not chargeable with contributory negligence because he continued using the pasture after he knew of the construction of defendant's fence there without sufficient openings.

**6.—Same—Crossings—Stipulation in Deed.**

Under a stipulation in a deed of a right of way executed by plaintiff to defendant, that defendant should "construct all necessary crossings in its line over my land," plaintiff was entitled to show what character of crossings and how many were necessary for the proper use of his premises.

**7.—Same—Open Crossing—Public Policy.**

A contract stipulation for an open private crossing over a railway track is not void as against public policy. Following Railway v. Schow, 55 Southwestern Reporter, 375.

**8.—Same—Way of Necessity—Common Law Right.**

The common law right of an owner of land across which a railroad is constructed to have an adequate and reasonably sufficient way of necessity over the railroad has not been restricted or abridged by the Texas statutes.

Appeal from Burleson. Tried below before Hon. Ed R. Sinks.

*J. W. Terry,* for appellant.

*Campbell & Pennington,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—Appellee brought this suit ·to recover of appellant the value of certain cattle, horses, and mules owned by appellee and alleged to have been drowned by the negligence of appellant in failing to leave an open crossing over its railroad which runs through appellee's pasture, said animals being thus prevented from es-

caping from high water caused by the overflow of Yegua Creek, which runs through said pasture. The cause was submitted to a jury in the court below upon special issues and the jury found, first, that the fencing by appellant of its right of way through appellee's pasture without leaving any open crossing caused the loss of appellee's stock, and that the value of the stock so drowned was $1755; second, that plaintiff could not by the exercise of ordinary care have prevented the drowning of any of said stock; third, that none of said stock would have been drowned if there had been any open crossing over appellant's railroad; fourth, that it was necessary for the proper use of the premises by appellee for the appellant to have constructed an open crossing with cattle guards over its railway on said premises.

Upon these findings by the jury the court below rendered judgment in favor of appellee for $1755, from which judgment appellant prosecutes this appeal.

Appellant assails the findings of the jury as being contrary to the evidence in the following particulars:

1.  Because the undisputed evidence shows the overflow in which appellee's animals were lost was of an extraordinary and unprecedented character, occasioned by an unprecedented rainfall, and the rise in the Brazos River and in the Yegua Creek was so sudden and rapid that some if not all of appellee's stock would have been drowned regardless of whether said right of way had been fenced or open.

2.  Because the evidence fails to show that none of said stock would have been drowned if appellant had left an open crossing over said right of way, and fails to show that the failure of appellant to construct such crossing was the proximate cause of the drowning of each head of stock lost by appellee.

3.  Because there is no evidence to show that the horses and mules in said pasture were in the habit of going into the hills across the right of way of defendant, or that the failure of defendant to leave an opening in the fence along its right of way through said pasture was the proximate cause of said horses and mules being drowned.

4.  Because the evidence shows that the appellee and his agent in charge of said pasture were guilty of contributory negligence which was the proximate cause of the loss of said stock.

The evidence in the record bearing upon the issues of fact thus presented by appellant, succinctly stated, is as follows: Plaintiff owns a pasture of about 2000 acres situated in Burleson and Washington counties. Fifteen hundred acres of this pasture is in Burleson County and lies between the Brazos River and Yegua Creek. This creek is the boundary line between said counties, and 500 acres of the pasture is on the Washington County side of the creek. All of the 1500 acres in Burleson County except about 150 acres is very low land and subject to overflow in any ordinary rise of the Yegua Creek. The 150 acres mentioned above is in the postoak hills above high water mark and never

overflows. The railroad of appellant runs along the foot of the hills entirely through said pasture for a distance of about two and a half miles. In April, 1899, appellant built a fence along its right of way through said pasture and left no openings through the fence or across the right of way. This fence cut off the hills and all of the high land in said pasture from the low lands, and prevented the stock in said pasture from going to the high land for protection from overflows. Prior to the fencing of said right of way the cattle in said pasture would come out of the low land at night and go up into the hills to sleep and get away from the flies and mosquitoes, and would also go to the hills during high water. When appellant was building this fence appellee requested that open crossings be left in same, and explained to appellant's agent the necessity of having such crossing made in order to prevent the drowning of appellee's stock. The request for the crossing or openings in the fence were made by appellee several times, but no crossings or openings of any kind were made by appellant. After the right of way was fenced the cattle would come out of the bottom at night and sleep along the fence as near to the hills as possible. Appellee in 1882 conveyed to appellant the right of way across his land in Burleson County. This conveyance contains the following stipulation: "It is expressly understood and agreed that said company shall construct all necessary cattle guards and road crossings on the line of railway over my land."

About the 1st of July, 1899, there was an unprecedented overflow in the Brazos River and Yegua Creek caused by the heaviest rainfall ever known in that section of the State. The water from this overflow covered all of appellee's pasture except the postoak hills on the north side of appellant's railroad and was four or five feet deep over appellant's railroad track, and the fences along the right of way were submerged. All of the stock in said pasture on the Burleson County side of the Yegua were drowned, except a few head which plaintiff's agent in charge of the stock succeeded in getting out by breaking down the fence along the right of way. Sixty-two head of plaintiff's cattle, valued at $1005, twenty-five head of his horses and mules, valued at $750, were drowned in this pasture during said overflow. Several witnesses testified that they saw bunches of plaintiff's cattle and horses swim up to and along appellant's right of way fence, and failing to find any opening swim back toward the creek and disappear. The sixty-two head of cattle and twenty-five head of horses and mules lost by appellee in this pasture ranged on the Burleson side of the Yegua and were on that side of the creek at the time of the overflow. The rise of the water was sudden and rapid, and Mr. Keifer, who was appellee's agent in charge of the stock in said pasture, testifies that from the time the water commenced to rise he could not have gone in and gotten the stock out before the water was all over the pasture; that he tried to save the cattle and did save a few of them by breaking down appellant's fence, and that it was impossible to get the stock out because there were no openings in

appellant's fence. He further testified on cross-examination that he supposed he could have cut the fence, but that he did not try to do it, and that if he had had help enough he might have knocked the staples out and mashed the wire down.

Appellee was sick at the time of the overflow and unable to do anythings towards saving his stock. There are no knolls or high places in the bottom lands in appellee's pasture, but there is a slight depression between the railroad and the Yegua, and when the creek overflows the water runs into this depression before it covers all the land between it and the creek. This depression or slough, as some of the witnesses call it, is not more than a foot deep. It is not shown at what hour the pasture was overflowed, whether in the day or night, but it remained under water for several days. In any ordinary overflow the water covered all of the pasture between the railroad and creek and was deep enough to drown any stock that might be confined in the pasture. After the overflow the carcasses of about sixty head of stock were found in the pasture, some of the carcasses being found along the right of way fence.

We think the evidence is sufficient to sustain the finding of the jury that all of the stock of appellee drowned in said pasture were drowned because of the negligent failure of appellant to construct the necessary open crossings over its railroad. This is not shown by direct evidence, and in the very nature of things could not be so shown, but from all the facts and circumstances established by the evidence the jury were warranted in concluding that but for the negligence of appellant in failing to leave openings in its fence all of appellee's stock would have been saved.

The instinct of animals impel them to flee from danger, and the habit of horses and cattle to go from low places to the higher to escape from rising water is a matter of common knowledge. In addition to these known facts there is positive testimony in the record to the effect that the stock in this pasture, before appellant built the fence along its right of way, were in the habit of going up into the hills to sleep at night, and also went there whenever there was an overflow of the bottom lands. When this overflow came numbers of plaintiff's animals were seen to swim to and along this fence in an effort to reach the hills. The fence was two and a half miles long and the evidence does not show how much of this distance was within the observation of the witnesses who testify to seeing stock swim up to the fence and try to get through, and the conclusion reached by the jury that all of the stock reached the fence and would have gotten to the hills and been saved had appellant left the necessary openings in said fence is not unreasonable or improbable. Appellant refused to leave an open crossing over the railroad after being warned of the probable consequences of its failure to do so. Having cut off the stock in said pasture from their only way of escape from the flood, appellant should not escape the natural and probable consequence of its negligence merely because it is impossible that some of said stock would have been lost if it had not been guilty of such negli-

gence. The building of the fence by appellant without the necessary openings was an efficient and probable cause of the loss of all of the stock in said pasture, and the jury having found upon all the facts in evidence that such negligence on the part of appellant was the proximate cause of the loss of all of said stock, we can not disturb that finding.

The fact that the overflow in which this stock was drowned was unprecedented in its suddenness and in the height to which the water rose in no way effects the question of appellant's negligence, because the evidence shows that the stock in this pasture would have been drowned in any ordinary overflow after appellant constructed its fence without making the necessary openings in the same. This disposes of the first two of appellant's objections to the verdict.

The character of the overflow is material only on the question of contributory negligence on the part of plaintiff and his agent. We are of opinion the evidence does not raise the issue of contributory negligence. The undisputed evidence is that the plaintiff was sick in bed at the time of the overflow and was unable to do anything towards saving his stock. His agent, Keifer, testifies that he did everything in his power to save the stock and did save some of them by pulling or breaking down a portion of appellant's fence, and that the water rose so rapidly that it was impossible to get the cattle out before the pasture was submerged. The burden was upon the appellant to show contributory negligence on the part of appellee or his agent, and the only suggestion of such negligence found in the evidence is the statement of the witness Keifer, on cross-examination, that he supposed he might have cut the fence and got the cattle out in that way. This was not followed up by appellant, and the witness was not asked why he did not cut the fence. It is not shown that Keifer had any implement or tool with which to cut the wire, nor is it shown when he arrived on the scene or the condition of the water in the pasture at the time he got there. The evidence does show that the fence was submerged, and if this was the condition when Keifer reached the pasture and he had no tool with which to cut the fence, then certainly the conclusion that he was not guilty of contributory negligence in not cutting or attempting to cut the fence is one about which reasonable minds can not differ. We think the verdict of the jury upon this issue is sustained by the uncontradicted evidence in the case.

Appellant's fourth objection to the verdict on the ground that same is contrary to the evidence, in that there is no evidence showing that the horses and mules drowned in said pasture were in the habit of going into the hills across appellant's right of way, or that the fence was the proximate cause of said horses and mules being drowned, is, we think, without merit. It is true the witnesses only used the word cattle in speaking of the habit of the animals in the pasture of going to the hills to sleep and to escape high water, but we think it a fair inference from all the testimony that the witnesses used the word cattle in this connection in its broadest sense, and intended by its use to include all of the animals in the pasture. But be this as it may, as before said, we

think the habits of horses and mules in this regard is a matter of such common knowledge that it could have been properly considered by the jury without the introduction of any evidence on the subject.

. It was not error for the court to refuse to allow the appellant to prove by the appellee that he knew the condition of his pasture and its liability to overflow, and that appellant had left no openings in its right of way fence, at the time he put his stock in said pasture, and was aware of the danger to his stock for a long time prior to the overflow. Appellant contends that this testimony was admissible for the purpose of showing contributory negligence on the part of appellee in placing his stock in said pasture and in allowing them to remain there, knowing the danger to which they were exposed. The proposition under this assignment is in substance that appellee should have abandoned the use of his pasture after appellant constructed its fence and sued appellant for the depreciation in the value of his land caused by the negligent construction of said fence. This exact question has been decided by our Supreme Court adversely to the appellant's contention. The owner of property is entitled to use it in any lawful manner he may desire for any purpose for which it is adapted, and he can not be deprived of such use merely because damage may, under certain contingencies made possible by the wrongful act of another, thereby result.

In the case of Clark v. Dyer, 81 Texas, 344, our Supreme Court say: "The law does not require that the owner shall preserve and guard his premises from the effects of injuries caused by the wrongful act of another before he is justified in the use thereof. A different rule would virtually deprive the owner of the beneficial rights that flow from and are incident to the enjoyment of his estate; for an attempted use would always be defeated by results that would flow from the wrongful acts of the promoter of the injury, he being permitted to say you can not hold me for the results of my wrong, because you should have anticipated injury would flow therefrom and you should have guarded against it. The law will not allow the promoter of the wrong to so deprive the owner of the use of his premises or require him to use it at his peril."

In the case cited the question under consideration was the right of the owner of the premises to recover for the value of crops destroyed by an overflow, the damage caused by the said overflow being due to the negligent construction of an embankment by the defendant. The embankment was constructed long prior to the planting of the crop, and the plaintiff knew at the time he planted said crop the damage that would accrue to same by reason of the negligent construction of said embankment, in event of an overflow. We think this decision is conclusive of the question raised by this assignment.

Appellant's seventh assignment complains of the refusal of the trial court to submit to the jury the question of contributory negligence on the part of appellee's agent, Kiefer, in failing to cut appellant's fence after he found that the pasture had overflowed and appellee's stock were in danger. As before stated, we do not think the evidence on this point

raises the issue of contributory negligence, and for this reason the charge was properly refused.

Appellant in its remaining assignments urges that the court erred in allowing appellee to prove that an open crossing over appellant's railroad was necessary for the proper use of his premises, and in submitting such issue to the jury. The contentions under these assignments are: (1) That under the stipulation contained in the deed from appellee for the right of way he was not entitled to an open crossing. (2) That if the stipulation be a contract for an open crossing it is void as against public policy. (3) That in the absence of a contract the appellee would not under the law be entitled to an open crossing.

The language in the deed, as before stated, is, "said company shall construct all necessary cattle guards and road crossings on the line of said railway over my land." It is unnecessary for us to determine whether this language by express terms contemplates an open crossing. It does expressly contract for all necessary crossings, and it would seem that under the contract plaintiff would be entitled to show what character and how many crossings were necessary for the proper use of his premises. The question of the validity of a contract which provides that a private crossing over a railroad shall be left open was raised by this appellant in the case of Railway v. Schaw, 55 Southwestern Reporter, 375, and the Court of Civil Appeals for the Third District in their opinion in said case holds that such contract is not against public policy. We are not inclined to question the soundness of that opinion.

Under the common law the owner of land over which a railroad is constructed is entitled to a way of necessity over such railroad. Such way must be adequate and reasonably convenient and sufficient to meet the necessities of the owner. This common law right has not been abridged or restricted by our statutes upon the subject, and if it were necessary for the proper use of appellee's premises that an open crossing be left over appellant's railroad, appellee was entitled to show such necessity, and its existence enforced upon the appellant the duty of constructing such crossing. Railway v. Chenault, 60 S. W. Rep., 58.

We think there is no reversible error shown in the record of this case, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.