J. D. A. McLELLAN v. BROWNSVILLE LAND & IRRIGATION COMPANY.

Decided May 1, 1907.

**1.—Flooding Land—Liability.**

The owner of land which he knows is liable to be flooded by water from the ditches of an adjacent irrigation plant, is not required to desist from planting crops on said land nor to build ditches or embankments to perfect his crops or land. It is the duty of the owner of the irrigation plant to so construct its ditches and use its property as not to injure others.

**2.—Same—Preventing Injury.**

Where one person suffers injury by the carelessness of another, occurring unexpectedly, and in a transitory manner, the one so suffering must go to some trouble or expense to avoid or lessen the damage; but if the injury be a continuing one, and the person causing the same has equal knowledge of, and opportunity to prevent, the damage, it is his duty to prevent it, and he can not avoid responsibility by showing that the person injured might have avoided the damage by a slight expense.

**3.—Bill of Exception—Duty of Judge.**

It is the duty of a trial judge to hear courteous objections to evidence and rule upon the same, or to give a bill of exception to his refusal to hear such objections.

Appeal from the District Court of Cameron County. Tried below before Hon. Stanley Welch.

*Creager & Hudson*, for appellant.—The fact that appellant's land had been overflowed from natural causes and his crops destroyed previous to the time appellee caused it to be overflowed would not in any way relieve appellee from liability for damages caused by it, in negligently and willfully flooding and overflowing same. Clark v. Dyer, 81 Texas, 343; San Antonio & A. P. Ry. Co. v. Gurley, 83 S. W. Rep., 842; Texas & P. Ry. Co. v. Padgett, 14 Texas Civ. App., 436; Cooley on Torts, p. 679.

It is not contributory negligence for the land owner to plant crops, without erecting levees around same, with knowledge that his land may be overflowed, if the overflow is threatened by reason of the wrongful or tortious acts of another. The law will not permit the promoter of a wrong, by means of such wrong, to deprive the owner of the use of his property, or to require him to use it at his peril. Clark v. Dyer, 81 Texas, 343; Cooley on Torts, p. 679; 8 Am. & Eng. Encyc. of Law (2d ed.), p. 606; 30 Am. & Eng. Encyc. of Law (2d. ed.), p. 338.

It is no defense to an action for wrongfully discharging water on the plaintiff's land and could not establish negligence on his part to show that the plaintiff failed to erect levees or embankments to protect his land, unless it is also shown that, with the means at his disposal, plaintiff could have constructed same; that he could have done so by moderate expense and ordinary effort and care, and that the construction of such levees or embankments would not have resulted in injury to contiguous land or property. Austin & N. W. Ry. Co. v. Anderson, 85 Texas, 89; Galveston, H. & S. A. Ry. Co. v. Borsky, 2 Texas Civ. App., 545; Galveston, H. & S. A. Ry. Co. v. Ryan, 21 S. W. Rep., 1013; Gulf, C. & S. F. Ry. Co. v. Reed, 22 S. W. Rep., 283; Gulf, C. & S. F. Ry. Co. v. Simonton, 2 Texas Civ. App., 559; Cooper v. City of Dallas, 83 Texas, 242; Texas & St. L. Ry. Co. v. Young, 60 Texas 201; Waco Water Co. v. Cauble, 47 S. W. Rep., 538; 8 Am. & Eng. Encyc. of Law, (2d. ed.), pp. 606 and 607; Field on Damages, sec. 21.

Appellant would have had the right to recover of appellee the damages sustained by him, no matter what may have been the source from which the water damaging him came, if as a matter of fact

said water was conveyed onto his farm by reason of the drainage ditches constructed by appellee. Gembler v. Echterhoff, 57 S. W. Rep., 313; 30 Am. & Eng. Encyc. of Law (2d ed.), pp. 335 and 336.

*James B. Wells* and *Kleberg, Davidson & Neethe,* for appellee.— That the question as to whether or not a certain state of facts is negligence or contributory negligence, is a question for the jury. International & G. N. Ry. Co. v. Gray, 65 Texas, 32, 36; Missouri Pac. Ry. Co. v. Rogers, 91 Texas, 56; Galveston, H. & S. A. Ry. Co. v. Sweeney, 14 Texas Civ. App., 219.

*Causa proxima non remota, spectatur.* Jones v. George, 61 Texas, 345, 353; Texas & Pac. Ry. Co. v. Reed, 88 Texas, 439; Texas & Pac. Ry. Co. v. Bigham, 90 Texas, 223; Smith v. Texas & Pac. Ry. 24 Texas Civ. App., 92; Central Texas & N. W. Ry. v. Hoard, 49 S. W. Rep., 142.

The court did not err in its charge, because if the damage to appellant's crops was caused by the natural lay of the land, and not by any act of the defendant corporation, then defendant would not be liable for such damages. As to scope of general denial: Griffin v. Chubb, 7 Texas, 603, 612; Smothers v. Field, 65 Texas, 435.

The court did not err in failing to return the plaintiff or his counsel the bill of exception proposed by him, and in failing to attach the same and file it with the other bills of exception granted by the court. The judge, upon whom the statute imposes the duty of settling the bill of exception, having found the one proposed by plaintiff's counsel to be incorrect, settled a bill of exception in accordance with the facts as they occurred upon the trial of the case. Arts. 1366, 1367, 1368, Rev. Stat. of Texas, 1895; Firebaugh v. Ward, 51 Texas, 409.

FLY, ASSOCIATE JUSTICE.—Appellant sought to recover damages arising from the destruction of his sorghum and cotton crops in the year 1904, by water which was collected by appellee from the Rio Grande and caused to flow over his land. The cause was tried by jury and resulted in a verdict and judgment for appellee.

The facts do not present a case where a calamity has suddenly come upon a party, and the evil effects of which he has used no efforts to mitigate or avert, but it is a case in which a citizen who has had land leased for several years, plants his crop on that land, although since he leased the land a corporation has placed an irrigation plant in proximity to his land. Was it his duty to refrain from the use of his land or to build embankments to protect his crops from an anticipated flow of water from the irrigation plant? Those are the questions we endeavor to answer in the following opinion.

The court charged the jury as follows: "If you believe from the evidence that the Tule Grande, upon which the plaintiff was engaged, in 1904, was at the time he planted his crops thereon of cotton and sorghum a well defined, known and recognized lake, natural basin or depression into which the rainfall, storm overflows and drainage waters from the surrounding country flowed and was accustomed to there accumulate and stand, and that same was well known to

plaintiff at that time; that his crops thereon planted during the year 1903 were destroyed by water flowing into and collecting in said Tule Grande; and you believe that with such knowledge (if any) his planting upon the land of the said Tule Grande was a failure to use such care as a person of ordinary prudence would have used under the same or similar circumstances, and was negligence, and that such negligence (if any) contributed to or caused the destruction of the plaintiff's growing crops (if they were destroyed) the plaintiff could not recover herein and your verdict will be for the defendant." To paraphrase the charge: "If you find that the plaintiff planted his crop on his land in 1903 and had it destroyed by the natural overflow of the waters, he could not recover for the destruction of his crops in 1904 although the crop was not injured by any natural overflow, but was destroyed by the acts of defendant in pumping water out of the Rio Grande in such quantities that it overflowed plaintiff's land." Such a proposition of law cannot be entertained for a moment. It would not matter how negligent and careless appellant may have been in planting his crop in a depression which was subject to overflow, that carelessness would not authorize any person to turn water into the depression and destroy the crop. A person might negligently place himself on a track from which he had once been knocked by a locomotive, but that carelessness would not authorize a person to shoot him off the track. A man might have his crop destroyed time and again by cattle on account of his defective fences, but that would not authorize any one to gather a lot of cattle and drive them into the crop and destroy it. It may have been a very short-sighted and ill-advised policy on the part of appellant to plant his crops in a valley where the natural surface water might destroy it, and yet that did not give a license to appellee to collect water from a river and then turn it loose and let it flood and destroy appellant's crops. If carelessness and a lack of reason and discretion placed a person in a position to be injured by any man whose interest it might be to destroy his property, a large portion of the world would be at the mercy of the other portion. What if appellant had acted unreasonably in planting his crops in a natural basin where water was as prone to flow "as the sparks to fly upward" upon what principle of law could that fact preclude him from recovery of damages resulting from the tortious acts of another in flooding and destroying his crops? The charge is clearly without legal warrant, and the court should have entertained the exception to that portion of the answer that formed the basis of the charge. The issue in the case was, did appellee by its negligence flood and destroy or damage the crops of appellant, regardless of whether crops had been destroyed by natural overflows prior to that time or not. That such natural overflows had taken place did not remove appellant beyond the pale of the protection of the law against the wanton or negligent acts of other persons.

The following charge was given by the court: "If you believe from the evidence that when the plaintiff, in 1904, planted his crops of cotton and sorghum on the land of the Tule Grande he knew that the drainage and other ditches and the reservoir or lake,

all as complained of in his petition, had already been constructed and existed, and that the natural flow (if any) of the water from the rice fields adjacent and tributary to said drainage ditches would cause an overflow of the land so planted by him, and cause the destruction of his crops thereon grown, unless the land on which he planted was protected by proper levees and earth embankments; and you further find and believe from the evidence the plaintiff failed to erect or construct such levees or embankments, and that such failure (if any) to erect or construct the same was negligence, and that such negligence (if any) contributed to or caused the destruction of his growing crops (if they were destroyed) then the plaintiff cannot recover herein, and you will find a verdict for the defendant." In other words the charge was that if appellant knew before he planted his crops that the drainage ditches erected by appellee, would flood his land and probably destroy his crops, that he could not recover for the destruction of his crops unless he had built proper levees to protect his crops, regardless of what it might cost to build such levees or embankments and regardless of the damage that might be inflicted on contiguous property. Appellant sought to qualify the charge by an instruction to the jury that the duty of building the embankments did not devolve on appellant unless it appeared: "1st. That the plaintiff, with the means at his disposal, could have constructed said levees or embankments. 2nd. That he could have done so by moderate expense and ordinary effort and care. 3rd. That the construction of said levees would not have resulted in injury to contiguous land or property."

The requested charge was refused by the court and the jury left to find appellant negligent in not building the embankments, even though it could only be done at an enormous expense and even though it may have subjected him to suits for damages by owners of contiguous property.

It is a general rule of the law that a plaintiff is required to lessen, or avoid altogether, damages about to be inflicted, when it can be done by the exercise of ordinary care. He is not compelled, however, to anticipate that some one else will be guilty of negligence and injure or destroy his property. He is not called upon to guard against damages that might possibly arise from the acts of another so long as there is any uncertainty that the damages will be inflicted. If he sees that his property is about to be damaged, he should use ordinary care in mitigating or averting altogether the impending evil, but he is not called upon to act upon a possible or contingent calamity. In the case of the person the law requires one to anticipate danger, but in the case of property, the law does not require the owner to act until the danger is active. If appellant knew that the ditches of appellee would probably cause the water to overflow his land, did not appellee also know it? And so knowing under what principle did it have the right to so construct its ditches and then demand that appellant should erect a wall to protect himself from its negligence? Appellee having immediate charge of the instrument of destruction had better means for guarding against evil effects than did appellant. It was the active agency that produced the cause that would

result in damage to appellant, it had immediate control of that agency, and it, rather than the innocent party whose only offense is in having land in a depression in proximity to appellee's possessions, should be called upon to protect his crops from destruction. Mansfield v. Richardson, (Ga.) 45 S. E. Rep., 269.

While the general rule as to the mitigation or averting of damages is as hereinbefore stated, it has been held, as above stated, not to apply in cases where there is a continuing injury, and the party causing the injury has an equal opportunity to prevent the damage as one suffering it. The rule is thus stated in McCarty v. Boise City Canal Co. (Idaho), 10 Pac. Rep., 623; "We understand the rule to be that where one person suffers injury by the carelessness of another, occurring unexpectedly, and in a transitory manner, the one so suffering must go to some trouble to avoid or lessen the damage, if a temporary expedient or slight expense will do so; but if the one whose carelessness or negligence causes a continuing injury to another, having knowledge of the evil and the cause of it, deliberately stands by, having an equal opportunity to prevent the damage as the one suffering it, and permits it to continue without an attempt to prevent it, he cannot avoid his responsibility by showing that the one injured might have avoided the damage by a slight expense."

The case as stated by the Idaho court is quite similar to this. "The theory and claim of defendant is that the plaintiff was under a legal obligation to dig a ditch upon her own premises, if it could be done at a small expense, and then conduct the said seepage from defendant's ditch off her land." There is this difference, that appellee's theory herein is that appellant should have built an embankment to protect his crops although it may have bankrupted him to have done so. The Idaho court said: "If this be true, then it results that ditch owners have such a dominion over the lands through which their ditch is located as gives them not only a right of way for lateral ditches to conduct off water escaping from their main ditch through the adjoining land, but also that such escape ditches shall be maintained by such adjoining owners, providing that it can be done at a small expense. We do not understand that the doctrine relied on can be extended so far. The plaintiff is entitled to control her premises."

The last sentence quoted is the key-note to the whole matter. If appellant has the right to enjoy his property, whether on a mountain top or in a low valley, he cannot be required to build a Chinese wall about his possessions in order to enjoy them free from the molestation of some one who may desire to trespass upon his rights. The wrongdoer could not under sanction of law say to him: "I am going to build a reservoir into which I will pump the waters of the river, I will dig ditches to convey that water into a pond and it will probably overflow and spread upon your land. If you wish to enjoy your property and raise crops upon your land, you must build a wall round about it and keep out the water which I will cause to flow down upon you. It is no concern of mine how much it may cost you, nor how much trouble and expense you may incur by turning the water upon the lands of others." No such doctrine of force

and oppression will be tolerated in this State, but appellee must respond in damages for so using its property as to injure or destroy the property of others. Under the facts of this case we do not think that appellant, in order to reap the fruits from his land, was compelled to build an embankment to protect himself from the inroads of a wrongdoer.

In the case of Shields v. Orr Extension Ditch Co., 47 Pac. Rep., 194, the Supreme Court of Nevada approved the Idaho case, and said: "An instruction also was asked to the effect that the plaintiff himself should have exercised ordinary care to have avoided the consequences of defendant's acts, and failing to do so, the parties were in mutual fault. The doctrine of contributory negligence' is not applicable to cases of this nature, where the defendant had knowledge of the defects of its ditch, and could have prevented the injury. Under these circumstances, no duty rested upon plaintiff to have avoided the consequences of defendant's acts."

In the case of Pixley v. Clarke, 35 N. Y., 520, the defendant had, by building an embankment, caused water to overflow the plaintiff's land and it was contended that plaintiff should have dug a ditch to protect his land from the water. The Court of Appeals said: "They add that the plaintiff can protect himself, if he will appropriate a part of his land to a ditch and keeping it in repair for their benefit. This shocks the sense of honesty and justice." Again it was said: "The defendants also insist that the injury might be remedied by the plaintiff at small cost, by digging a drain along the embankment. If this were true, he is not bound to do it. As the defendants caused the damage, without authority, and for their own benefit, they should find the remedy at their own expense. They might have purchased more land in which to make the ditch, if they have no ground now, or purchased the right to flow the land of their neighbor."

The law proceeds upon the principle that a person has the right to use his property for the purposes for which it was intended and cannot be held to be negligent in not anticipating that the uses to which he has put his property will be rendered futile by the acts of some one else, and be called upon to erect barriers against the invasion of his rights. "The law does not require that the owner shall preserve and guard his premises from the effects of injuries caused by the wrongful acts of another before he is justified in the use thereof. A different rule would virtually deprive the owner of the beneficial rights that flow with and are incident to the enjoyment of his estate; for an attempted use would always be defeated by the results that would flow from the wrongful acts of the promoter of the injury, he being permitted to say, you cannot hold me for the results of my wrong because you should have anticipated injury would flow therefrom and you should have guarded against it. The law will not permit the promoter of the wrong to so deprive the owner of the use of his property or to permit him to use it at his peril." Clark v. Dyer, 81 Texas, 339. See also to the same effect, St. Louis S. W. Ry. v. Blackwell (Texas Civ. App.), 40 S. W. Rep., 860; Rutherford v. Texas & Pac. Ry. (Texas Civ. App.), 61 S. W. Rep., 422; St. Louis S. W. Ry. v. Miller (Texas Civ. App.), 66

S. W. Rep., 139; Gulf, C. & S. F. Ry. v. Clay (Texas Civ. App.), 66 S. W. Rep., 1115. The last two cases were approved by the Supreme Court.

The principle is well established that where successive overflows are caused by the negligent construction of reservoirs, ditches or embankments, each overflow is a fresh nuisance and creates a new cause for action. Chicago, P. & St. L. Ry. Co. v. Reuter, 79 N. E. Rep., 166. That principle could not exist if it should be held that the landowner should construct walls or embankments to protect his land, when he has notice that the negligence of a neighbor has made it reasonably certain that his land will be flooded. The whole doctrine of nuisance rests on the maxim of *sic utere tuo ut alienum non laedas*—so use your own as not to injure the rights of others. "It is well settled that although every land-owner has a right to use his own land for any lawful purpose for which in the natural course of enjoyment, it can be used, yet he cannot use his neighbor's land except upon proof of express grant or permission, or prescription which furnishes a presumption of a grant." Gembler v. Echterhoff (Texas Civ. App.), 57 S. W. Rep., 313.

If appellee collected the water and turned it loose, for whatever purpose it may have been intended, and it ran over appellant's land whether it came directly from appellee's reservoir or by devious ways across the lands of others, it would be liable for the damages. Its acts would be the proximate cause of the injury and it would be no defense for it to show that it did not turn the water directly on the land of appellant, but caused it to flow first over the land of others. In this connection the special charge asked by appellant should have been given.

Appellee not only pleaded that appellant could have protected his crops at a small expense in labor or money, but introduced evidence that others in the immediate neighborhood had so protected crops, and while we think that the issue was one that had no place in the case, yet by every rule of justice and right when it was injected appellant should have been permitted to meet and overthrow it by evidence of the enormous expense that would be incurred, if he could do so, such privilege, however, was refused him.

We are of opinion that evidence, under the general denial, as to the water being conveyed to appellant's land by a ditch constructed by him and Lon C. Hill, was admissible. It tended to refute the charge that appellee had overflowed the land.

The assignment of error as to the refusal of the trial judge to listen to the objections of counsel to certain evidence will not occur again, and it would be unnecessary to consider it had not the Legislature placed the unnecessary duty on appellate courts of considering every assignment of error. The court should have heard courteous objections made by appellant whether he deemed them tenable or not, and should, after he had refused to hear the objections, have signed the bill of exceptions showing that fact. This was not done, and appellant was compelled to prove his bill of exceptions by bystanders. The judgment is reversed and the cause remanded.

*Reversed and remanded.*