[No. 16143.    *En Banc.*    August 8, 1921.]

NORTH BEND LUMBER COMPANY, *Respondent,* v. THE
CITY OF SEATTLE, *Appellant.*[1]

NEGLIGENCE (16, 18)—CONTRIBUTORY NEGLIGENCE—NATURE AND
ELEMENTS—CARE REQUIRED AS TO USE OF PROPERTY. The fact that a
property owner knew or suspected that the negligence of another
might cause damage to his property and made no effort to counter-
act it, would not constitute contributory negligence on his part,
since the rule of personal conduct which requires one to make a
reasonable effort to protect his person from the known negligence
of another does not extend to the use of property.

WATERS AND WATER COURSES (79, 87)—PUBLIC SUPPLY—DAMAGES
FROM NEGLIGENCE. In an action for damages against a city for the
destruction of plaintiff's mill property by the flooding of a creek on
which the mill was located, a question for the jury was presented
where there was evidence showing that the flood had been swelled
by the bursting out of water through one wall of defendant's reser-
voir, which wall was a glacial moraine of pervious character util-
ized for the purpose, through which there had always been seepage
within the knowledge of defendant.

Appeal from a judgment of the superior court for
King county, Smith, J., entered May 4, 1920, grant-
ing a new trial, after the verdict of a jury rendered in
favor of the defendant, in an action in tort. Affirmed.

*Walter F. Meier* and *Frank S. Griffith,* for appellant.
*Peters & Powell,* for respondent.

BRIDGES, J.—Boxley creek is a small mountain
stream in King county, having its source near Rattle-
snake lake, and running thence in a southerly direc-
tion for some three miles, empties into the south fork
of the Snoqualmie river. The plaintiff, North Bend
Lumber Company, had its sawmill located on both sides
of this creek, at a point about one mile above its mouth.
The Druid Lumber Company's sawmill was located on

[1]Reported in 199 Pac. 988.

the same creek, but very near its mouth. These mills were built during the years 1905 and 1906, and from time to time since have been enlarged. The plaintiff built a dam across the creek a short distance above its mill for the purpose of creating a pond of water in which to store its saw logs. A platform crossed the creek from one part to another of the sawmill. This platform rests upon piling driven in the banks and bed of the stream.

Cedar river flows through Cedar lake, which is located near the foot of Mount Washington. The river, after flowing out of the lake, takes, for a number of miles, a general westerly course. In 1914, the city of Seattle constructed a large dam in this river at a point about two miles west of the lake. The purpose of the dam was to impound waters in the canyon of the river between the lake and the dam, to be used by the city in generating electric power. The northerly bank of this reservoir is for the most part a glacial moraine. Whether this moraine formation would permit much of the water of the reservoir to leak out has been a question from the beginning, and has, to a considerable extent, disturbed the minds of the city authorities. This glacial moraine covers several hundred acres and a part of it is within the watershed of Boxley creek, and a part within the Cedar river watershed. The divide between the two watersheds is less than one mile in width.

Immediately prior to December 23, 1918, there had been heavy rains which caused the waters of Boxley creek to become very considerably swollen. On that date the sawmills of the North Bend Lumber Company and of the Druid Lumber Company were either wholly or partially destroyed by high water. The plaintiff sued the city of Seattle for its damage, and also for

damage to the property of the Druid Lumber Company, the latter having assigned to the former its claim of damages.. The plaintiff contends that its damage was caused by the waters from defendant's reservoir seeping through the coarse ground forming the moraine and tending in a westerly direction, suddenly breaking out in great quantities near the westerly edge of the moraine, thence being conveyed into the watershed of Boxley creek, and ultimately into that creek above plaintiff's works.

The plaintiff charged the city with negligence in the construction and maintenance of its reservoir, and particularly the north bank thereof, and in permitting the waters of Cedar river to be diverted in part into the channels of Boxley creek.. The city denied negligence upon its part, and denied that any of the waters had found their way into Boxley creek, to the damage of the plaintiff, and alleged that the damage done to its property was caused by the waters coming from the natural watershed of Boxley creek. It further alleged contributory negligence on the part of the plaintiff in building and maintaining its log pond in the creek, and in partially closing up the creek by means of piling, logs and debris.

Upon these issues the case went to trial before a jury, which returned its verdict in favor of the defendant. The plaintiff's motion for a new trial was granted by the trial court, and the defendant has appealed therefrom.

The trial court gave three instructions on contributory negligence wherein, among other things, it told the jury that it was to determine whether the plaintiff used such degree of care and prudence as an ordinarily prudent person, under the same or similar circumstances, would have used, and that in determining

whether it did use such degree of care and caution, the
jury had the right to, and should, take into considera-
tion any knowledge which the plaintiff had of the dan-
ger, and should consider all the circumstances and
conditions surrounding the situation.

At the hearing of the motion for a new trial, the
court concluded that it had erred in giving these in-
structions on contributory negligence, and for that
reason granted a new trial. The respondent argues
that there is not, and cannot be, in this case any ques-
tion of contributory negligence; that the only question
involved is whether, because of the negligence of the
appellant, any of the waters belonging to the Cedar
river watershed were suddenly diverted into the
watershed of Boxley creek, to the respondent's dam-
age; and that, if this question be answered in the
negative, then, under no circumstances, could the ap-
pellant be held liable; and that, if it be answered in
the affirmative, then, even if respondent's works in
the bed of the creek did block the stream more or less,
and did cause or aggravate the injury to its property,
still, there would be no question of contributory negli-
gence, because respondent would not be required, under
any circumstances, to so use its property as to protect
itself against the wrongful act of the appellant in di-
verting large quantities of the waters of Cedar river
into their unnatural watershed and into Boxley creek.

If the destruction of respondent's property was
caused by the waters naturally coming from the water-
shed of Boxley creek, or if appellant was not guilty of
the negligence charged against it, then that would be
an end of the case, for it is plain that, under those
circumstances, contributory negligence could not be in-
volved, because contributory negligence of the plaintiff
grows out of, and is necessarily associated with, the
negligence of the defendant.

But appellant argues that the question of its negligence was for the jury, and that, if the finding was against it in that regard, then it would be proper for the jury to consider whether respondent contributed to its damage by putting its dam across the creek and by driving piling in the bed of the stream, thus restricting its natural capacity. In this connection it asserts that there was testimony to show that some of respondent's officers had lived many years in the immediate vicinity of Cedar lake; knew that the appellant was creating the great reservoir; knew that its north bank was a moraine, and knew as much as the city officers concerning whether it was pervious to water, and because of this information had reason to anticipate that the very thing which happened might happen; that, notwithstanding all this knowledge, it afterwards caused the channel of the creek to be blocked in such a way as to impede the flow of the waters therein. To these facts (and it may be conceded that there was testimony tending to show such to be the facts) it applies the doctrine that one must protect himself and his property against such acts of negligence of others as a reasonably prudent person would have reason to anticipate.

Appellant's reasoning is plausible but not sound. We need not here decide whether one may use and improve his property in total disregard of a danger, resulting from the negligence of someone else, which he knows exists and which he is morally certain will damage him. There is no evidence showing or tending to show this condition. We hold, however, that one is not bound to use his property in anticipation of a situation arising which, because of the negligence of someone else, known to or suspected by him, may or may not cause him damage. The use one may make of

his property is not to be measured or limited by any such unstable rule as that contended for by appellant. At least, up to the point where one has become morally certain that the negligence of another will injure him, he may make any proper and customary use of his property in total disregard of any negligence of that other, whether such negligence be known to him or not. One owns real estate for the use he may make of it. Being the owner, he may make such use of it as he sees fit, so long as he does not injure his neighbor or violate some principle of the doctrine of police regulation. His neighbor may not say to him, "you must not improve your land nor plant it to crop, because I have been guilty of such negligence as may cause your improvements or your crop to be damaged or destroyed." Any other rule would permit one guilty of wrongdoing to deprive another of the right of making any lawful use of his property. If appellant's theory of the law is to prevail, then every man who owns real estate below a reservoir of water must use it at his peril, if he have reason to suspect the dam, through the negligence of the owner, has become weakened; and a farmer takes his chances in planting his land to crop, simply because he knows a culvert has been so negligently built by another that it will not carry away flood waters, but may cause them to wash over his land to his damage. The rule which requires one to make a reasonable effort to protect his person from the known negligence of another is a rule of personal conduct and, in the nature of things, cannot be extended to the use of property. Respondent knew something about the moraine and it knew that it formed the northerly bank of appellant's reservoir. It did not know that it was or was not impervious to water. From its standpoint, there was no certainty that what it claims happened

would happen. Must it then, at its peril, make use of the land because of the knowledge it had. If it was guilty of contributory negligence in putting a dam in Boxley creek, it was guilty of contributory negligence in constructing its mills on the bank of the stream.

An extensive examination of the authorities on this question convinces us that they are not in entire accord, and that the subject has not always been treated with the thoroughness its difficulties and importance deserve.

We will first examine the cases out of this court which affect the question. Appellant calls our attention to the case of *Box v. Kelso,* 5 Wash. 360, 31 Pac. 973, which it claims is contrary to our conclusion here. In that case the facts were that the plaintiff had cut some shingle bolts and left them in the woods, under such surroundings as that he knew they were in danger of being destroyed by fire. They were so destroyed, and he charged defendant with negligently causing the destruction. The defendant pleaded contributory negligence. Judge Anders, speaking for the court, among other things, said:

"While it may be true that this property might not have been destroyed if it had been in some other place, or differently situated, still we are of the opinion that ordinary prudence did not require the respondents to provide against the negligent acts of others *which they had no reason to anticipate.*" (Italics ours).

But that the court did not use those words in the sense appellant construes them is shown by the facts in the case and by what the court later said in the opinion, as follows:

"They had a perfect right to cut their timber into shingle bolts and to leave them upon their own premises as they did, and as was said by this court in *Tacoma Lumber & Mfg. Co. v. Tacoma,* 1 Wash. 12, 'were en-

titled at any and all times to have them protected from the wrongful and negligent acts of any and all persons'.   From what we have said it follows that the court committed no error in failing to instruct the jury upon the question of contributory negligence.''

Counsel for appellant also call our attention to a quotation from Cyc. found in the recent case of *Rainier Heat & Power Co. v. Seattle,* 113 Wash. 95, 193 Pac. 233, as follows:

''The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and *in the absence of reasonable ground to think otherwise* (Italics ours) it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty to such other person.   Hence failure to anticipate defendant's negligence does not amount to contributory negligence, even though he places his property in an exposed or hazardous position.''   29 Cyc. 516.

The italicized portion of this quotation may be correct as applied to individual conduct, such as is involved in a personal injury suit.      Indeed, the text shows that subject was under consideration, because, in connection with the discussion, it is said:

''This rule (to use reasonable effort to avoid danger) is subject to the exception that as a person is entitled to use his own premises for any lawful purpose, his failure to protect it from the negligence of another will not be contributory negligence.''   29 Cyc. 516.

Our holding in that case supports our conclusion here.    There the facts were that the heat and power company had its plant located in a basement, thirty feet below the level of the street grade.   One of the city's water mains, laid in an adjoining street, burst and flooded the cellar and injured and damaged the heating plant therein.   Speaking of the question of contributory negligence, we said:

"We are of the opinion that the maintaining of appellant's plant at the level of approximately thirty feet below the street grade was not contributory negligence, and that it must be here so decided as a matter of law. . . . It may have been obliged to anticipate damage from the natural flow of water and the accumulation of surface water, but manifestly, it was not obliged to anticipate danger from any such source as the bursting of this water main."

The appellant contends that the case of *Woolworth Co. v. Seattle,* 104 Wash. 629, 177 Pac. 664, is contrary to our conclusion. But that case, in our judgment, is easily distinguishable from this one. It was there held that no recovery could be had for damages because of the flooding and injury to goods located in a basement, where such flooding was caused by a city sewer of insufficient capacity, and the failure of the plaintiff to maintain and keep in proper repair a back water valve, required by ordinance to be installed. It will be observed that plaintiff was denied recovery because he had violated an express provision of a city ordinance.

In *Fraler v. Sears Union Water Co.,* 12 Cal. 556, 73 Am. Dec. 562, discussing this question, the court said:

"The defendants were bound to see to their own property, and to so govern and control it that injury would not result to their neighbor's. If, in consequence of gross neglect on the part of the plaintiffs, the injury happened, a different rule might be applied; but a mere want of reasonable care to prevent the injury does not impair the right to recover."

In the case of *Clark v. Dyer,* 81 Tex. 339, 16 S. W. 1061, the plaintiff was a farmer and his crops had previously been drowned out because of an insufficient road culvert. Notwithstanding such knowledge, the farmer again planted his ground to grain and again it was destroyed, and upon a suit for damages the de-

fense of contributory negligence was made. The court, discussing this question, said:

"The owner in lawful possession of his land is entitled to use in it any lawful manner he may desire, for any purpose for which it may be adapted. The owner in the exercise of this right is not guilty of negligence if he does not anticipate the results and consequences of acts that are remote, and may never happen, and of which he is not the promoting cause. The negligence that would defeat his recovery must be such as would proximately contribute to the injury. It cannot be said that the owner is guilty of negligence if he plants a crop on land that may be overflowed, when there are no present indications of that fact. . . . The law does not require that the owner should preserve and guard his premises from the effects of injuries caused by the wrongful acts of another before he is justified in the use thereof. A different rule would virtually deprive the owner of the beneficial rights that flow with and are incident to the enjoyment of his estate."

In the case of *Kendrick v. Towle,* 60 Mich. 363, 27 N. W. 567, the court said:

"The obligation of care to prevent the fire from the defendant's engine burning the plaintiff's mill rested upon the defendant, and the fact that old, combustible matter accumulated about the mill, and in near proximity to the railroad, cannot be urged as contributory negligence on the part of the plaintiff. He had a right to use the offal of his mill to fill up the waste and low places about it, just as he was accustomed to do before the railroad was built. He was not obliged to guard his premises to relieve the defendant from liability for his negligent acts."

In support of this general rule see the following cases: *Mississippi Home Ins. Co. v. Louisville, New Orleans & T. R. Co.,* 70 Miss. 119, 12 South. 156; *Helpand v. Independent Tel. Co.,* 88 Neb. 542, 130 N. W. 111; *McLennan v. Brownsville Land & Irrigation Co.,* 46 Tex. Civ. App. 249, 103 S. W. 206; *Emison v. Owy-*

*hee Ditch Co.,* 37 Ore. 577, 62 Pac. 13; *Philadelphia etc. R. Co. v. Smith,* 64 Fed. 679; *Hollenback v. Dingwell,* 16 Mont. 335, 50 Am. St. 502; *Gulf C. & San Francisco R. Co. v. Clay,* 28 Tex. Civ. App. 176, 66 S. W. 1115; *Underwood v. Waldron,* 33 Mich. 232; *Fritz v. First Division, St. Paul & Pacific R. Co.,* 22 Minn. 404; *Kellogg v. Chicago & Northwestern R. Co.,* 26 Wis. 223; *Cook v. Champlain Transportation Co.,* 1 Denio (N. Y.) 91; *Yik Hon v. Spring Valley Water Works,* 65 Cal. 619, 4 Pac. 666.

There are many cases touching the question of whether a railroad company may defend on the ground of contributory negligence, where private property adjoining the right of way has been destroyed by fire which was the result of negligence in operating trains. While such cases are not controlling of this case, they involve the same general question. A large number of such cases have been collected and digested in the note to *Walker v. Chicago, R. I. & P. R. Co.,* 76 Kan. 32, 90 Pac. 772, 12 L. R. A. (N. S.) 624.

We have said that the cases on this question are not harmonious. One which may be contrary to our conclusion is *Emry v. Raleigh & Gaston R. Co.,* 109 N. C. 589, 14 S. E. 352. Plaintiffs owned land a short distance from a culvert by means of which the defendant's road crossed a certain creek. It was claimed that this culvert was too small to allow the waters of the creek in times of freshet to pass through or under it, and that as a result a pond was created which overflowed plaintiff's land and damaged it, and also a brick yard located on the land. The plaintiffs testified that this overflow and damage occurred on an average of every four out of five years. The court said:

"It seems to us clear, and we cannot hesitate to decide, that no prudent business man would place and keep his brick-yard and brick-kilns at a place like that

in question, when he would hazard the loss or serious injury described by the plaintiff four years out of five. . . . A prudent business man would establish his business elsewhere and seek his remedy for injury to his land. . . . The defendant's insufficient culvert caused the flooding of the plaintiff's land. The latter well knew of this for years; still, they put their brick-kilns where they had strong reason to believe they too would be flooded and injured or destroyed. Thus they contributed to their own injury."

While this case may be distinguished on the facts from the case at bar because in the one the landowner had "strong reasons" to believe defendant's negligence would injure his land, because during previous years it had so done, while in the other case the landowner did not have "strong reasons" to believe it would be injured, because at no previous time had it been injured, yet we cannot follow the reasoning of the cited case. The idea that one by his wrongful act may drive an owner from his land and force him to "establish his business elsewhere" does not appeal to us. The plaintiff there owned the land and had a right to make any lawful use of it. If he could not establish his brick-kilns there, then he could not plant his crops, and thus is entirely deprived of any use of his lands. The foregoing is the strongest case cited by appellant, and we do not consider it necessary to review any others. Most of them are personal injury cases or cases involving flooding of cellars because of defective sewers, in all of which different principles of law are involved.

We therefore conclude that the question of contributory negligence is in no wise involved in this case, and that the court was right in granting a new trial because he had erred in instructing the jury on that question.

But appellant contends that, aside from the question of contributory negligence, the court erred in granting a new trial because there was not sufficient evidence of its negligence to carry the case to the jury. We cannot sustain this position. At the trial the appellant's contention was that the waters which damaged respondent's property were those belonging to the natural watershed of Boxley creek, and that none of them came from appellant's reservoir. On the other hand, respondent contended that the waters which injured it seeped from the reservoir through the moraine and were there stored in great quantities till they suddenly broke out and found their way into Boxley creek, and that appellant knew, or should have known, of the pervious character of the moraine. There was testimony to support each of these theories or contentions. It was, therefore, the duty of the court to submit to the jury the question of appellant's negligence.

The judgment is affirmed.

PARKER, C. J., MACKINTOSH, FULLERTON, MAIN, HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.