[Civ. No. 13893. First Dist., Div. Two. Nov. 22, 1949.]

CHARLES KLEINCLAUS et al., Appellants, v. MARIN REALTY COMPANY (a Corporation) et al., Respondents.

Theodore Tamba for Appellants.

Hoge, Pelton & Gunther, Richard A. Boyd and Leo V. Killion for Respondents.

DOOLING, J.—We granted a rehearing in this case to give further consideration to the question of appellants' contributory negligence. Since respondents in their petition for rehearing did not question the accuracy of the recital of the basic facts in our opinion previously filed nor our conclusion that their negligence was clearly established we copy that portion of our previous opinion:

"Plaintiffs appeal from a judgment adverse to them in an action for damages for flooding their land. Plaintiffs were

operating a private airfield and defendants, who had a contract with the United States Army Engineers to dredge a portion of a canal, pumped water from the canal onto property adjoining plaintiffs' airfield, whence it seeped through the earth dikes surrounding such property onto plaintiffs' airfield, flooding it completely and causing the damage complained of. The complaint counted upon defendants' negligence and the trial court found that defendants were not guilty of negligence and that plaintiffs were guilty of contributory negligence in blocking a natural drainage ditch across their own property.

"On appeal plaintiffs argue that the rule of absolute liability applies (*Nola* v. *Orlando,* 119 Cal.App. 518 [6 P.2d 984]) and defendants counter that having proceeded in the trial court on the theory of negligence plaintiffs may not change their theory on appeal to one of absolute liability (*Niegel* v. *Georgetown Divide Water Co.,* 78 Cal.App.2d 445 [177 P.2d 641]). We need not consider these questions since defendants' own testimony establishes their negligence beyond possibility of dispute. We quote from the testimony of defendant Rich:

" 'When we started to fill this area, we started here. It takes quite some time to fill that with water. Seepage started, of course, at the first place the water hit. . . . In a week or ten days the mud had pretty well stopped most of the seepage but by that time enough had seeped out that water would run quite some time through here. . . .

" 'The levee itself was approximately five feet higher than the ground . . . and we ran the water level up to within about a foot to six inches of the top of the levee making it four to four and a half above the ground.

" 'Q. Did you stop pumping water in after the area became flooded?

" 'A. No, we continued our operations until we finished dredging. . . . Because the ditch was blocked off was not our responsibility. We notified the people that blocked the ditch they had to open it.'

"It thus appears without conflict that with knowledge that water started to seep onto plaintiffs' property from the time defendants started to pump they continued to pump water into the area enclosed by the dikes until plaintiffs' airfield was entirely flooded by the seepage and even afterwards. In view of this admission the finding that defendants were not guilty of negligence is without support in the evidence."

The trial court found "that the negligence of the plaintiffs in blocking a natural drainage ditch across their property was the proximate cause of the plaintiffs' damage." The evidence in this respect showed that a drainage ditch had been carried under plaintiffs' runway through a wooden and metal culvert, that much of the water seeping onto plaintiffs' property from defendants' pumping operations drained into this ditch and that it developed that there must be an obstruction in the culvert because this water accumulated on the upper side of the culvert and only seeped through slowly to the other side. After a lapse of several weeks plaintiffs brought a clam shell dredge onto the property and tore out the culvert, after which the accumulated water passed through. Plaintiffs testified that the delay in this operation was caused by their inability to procure the necessary equipment earlier.

Upon a reexamination of the question we are satisfied with the correctness of our previous conclusion that plaintiffs were under no duty to anticipate defendants' negligent invasion of their land or to have any drainage facilities on their land to carry off water negligently cast thereon by defendants. In *LeRoy Fibre Co.* v. *Chicago. M. & St. P. Ry. Co.*, 232 U.S. 340, 349-350 [34 S.Ct. 415, 58 L.Ed. 631], a case dealing with the negligent setting of a fire on plaintiff's property by an adjoining railroad, the United States Supreme Court stated the principles involved so clearly as to justify the following extended quotation:

"That one's uses of his property may be subject to the servitude of the wrongful use by another of his property seems an anomaly. It upsets the presumptions of law and takes from him the assumption and the freedom which comes from the assumption, that the other will obey the law, not violate it. It casts upon him the duty of not only using his own property so as not to injure another, but so to use his own property that it may not be injured by the wrongs of another. How far can this subjection be carried? Or confining the question to railroads, what limits shall be put upon their immunity from the result of their wrongful operation? In the case at bar, the property destroyed is described as inflammable, but there are degrees of that quality; and how wrongful must be the operation? In this case, large quantities of sparks and 'live cinders' were emitted from the passing engine. Houses may be said to be inflammable, and may be, as they have been, set on fire by sparks and cinders from defective or carelessly handled locomotives. Are they to be subject as well as stacks of flax

straw, to such lawless operation? And is the use of farms also, the cultivation of which the building of the railroad has preceded? Or is that a use which the railroad must have anticipated and to which it hence owes a duty, which it does not owe to other uses? And why? The question is especially pertinent and immediately shows that the rights of one man in the use of his property cannot be limited by the wrongs of another. The doctrine of contributory negligence is entirely out of place. Depart from the simple requirement of the law, that every one must use his property so as not to injure others, and you pass to refinements and confusing considerations. There is no embarrassment in the principle even to the operation of a railroad. Such operation is a legitimate use of property; other property in its vicinity may suffer inconveniences and be subject to risks by it, but a risk from wrongful operation is not one of them.

"The legal conception of property is of rights. When you attempt to limit them by wrongs, you venture a solecism. If you declare a right is subject to a wrong you confound the meaning of both. It is difficult to deal with the opposing contention, There are some principles that have axiomatic character. The tangibility of property is in its uses and that the uses by one owner of his property may be limited by the wrongful use of another owner of his, is a contradiction."

The California cases are to the same effect. (*Yik Hon* v. *Spring V. W. W.*, 65 Cal. 619 [4 P. 666] ; *Steele* v. *Pacific Coast Ry. Co.*, 74 Cal. 323, 329-330 [15 P. 851] ; *Flynn* v. *San Francisco & S. J. R. R.* ., 40 Cal. 14, 19 [6 Am.Rep. 695] ; *cf. Tormey* v. *Anderson-Cottonwood I. Dist.*, 53 Cal.App. 559, 565-566 [200 P. 814].) In *Yik Hon* v. *Spring V. W. W., supra,* at page 620 the court said:

"Nor does the allegation that the water passed through the roof, or through openings in the roof, establish that plaintiffs contributed to the injury. They had the right to use their own premises for any lawful purpose. If they had placed their goods in canvas tents, this would not have relieved defendant of the consequences of its wrongful act. There was no such relation between the omission to provide means by which water would be effectually excluded from their building, and the tort complained of, as would make plaintiffs in any degree participants in the conduct which caused the damage. As has been said, 'the right of a man to make free use of his property is not to be curtailed by the fear that his neighbor will make a

negligent use of his.' (1 Thomp.Neg. 168. See also *Fero* v. *Buffalo R. Co.*, 22 N.Y. 209; and *Jefferis* v. *Phil. W. & B. R.*, 3 Houst. 447.)''

The following cases and texts announce the same rule: *North Bend Lumber Co.* v. *City of Seattle*, 116 Wash. 500 [199 P. 988 989-990, 19 A.L.R. 415]; *McCarty* v. *Boise City Canal Co.*, 2 Idaho (Hasb.) 245 [10 P. 623]; *Shields* v. *Orr Extension Ditch Co.*, 23 Nev. 349 [47 P. 194]; 45 C.J. 945; 56 Am.Jur. 854; 4 Shearman & Redfield on Negligence (rev.ed.), Zipp § 755, pp. 1731-1734; cases collected in note, 19 A.L.R. 423.

The tenor of the vast majority of the decisions is that a landowner may make any lawful use of his land and that it is not contributory negligence to neglect to take precautions to avoid future injury which can only occur as the result of another's negligence. As so tersely expressed by the United States Supreme Court in the passage above quoted from the LeRoy Fibre Company case: ''The tangibility of property is in its uses and that the uses by one owner of his property may be limited by the wrongful use of another owner of his, is a contradiction,''

There is little case law to support the complacent assumption of a right arising from a wrong in the statement of respondent Rich above quoted: ''Because the ditch was blocked off was not our responsibility. We notified the people that blocked the ditch they had to open it.'' This bold assertion of the right to flood another's land and put on him the burden of disposing of the water suggests wilfulness and if the case had been tried on that theory might have justified a finding of deliberate trespass.

*Woolworth Co.* v. *Seattle*, 104 Wash. 629 [177 P. 664], relied upon by respondents, involved the violation of an ordinance by the plaintiff, and has twice been expressly distinguished by the Supreme Court of Washington on that ground. (*North Bend Lumber Co.* v. *City of Seattle, supra*, 199 P. 988, 990; *Tombari* v. *City of Spokane*, 197 Wash. 207 [84 P.2d 678, 681].) *Nashville, C. & St. L. Ry.* v. *Nants*, 167 Tenn. 1 [65 S.W. 2d 189] is out of harmony with the general rule and the California cases above cited.

We are satisfied to hold that plaintiffs were not obliged to anticipate the negligent flooding of their land by defendants and that their permitting the drainage ditch to become clogged before the flooding started cannot constitute contributory negligence. If they had chosen to fill up the drainage ditch deliberately before the danger from flooding by defendants'

negligence occurred they would only have been exercising the rights of an owner to use his land in any lawful fashion. The evidence is clear that the culvert was already clogged when the water first began to accumulate in the ditch.

The most that can be said is that when plaintiffs discovered that the culvert was clogged they may have been under a duty to clear it out to mitigate their damages. Their land was then already invaded by the water negligently cast upon it by defendants, but the duty to mitigate damages exists alike in cases of breach of contract and tort, wilful as well as negligent. (8 Cal.Jur., Damages, § 43, pp. 782-783.) The negligent failure to mitigate damages involves other questions than those involved in contributory negligence and on those the court made no findings. The plaintiff is not bound to incur a relatively large expense in the attempt to mitigate damages. (*Schultz* v. *Town of Lakeport,* 5 Cal.2d 377, 384-385 [54 P.2d 1110] and cases there cited.) Here the evidence is that it cost $600 to clear the obstruction. The trial court, in considering the question of mitigation of damages, should weigh this cost against the total damages incurred. Also the trial court obviously did not consider the evidence that the delay in getting the clam shell was unavoidable since it found the "blocking" of the ditch to constitute contributory negligence and did not consider the question of delay in clearing it out, nor whether that delay was excusable. At the very least plaintiffs would be entitled to the reasonable cost of clearing out the culvert.

The reasonable cost involved in mitigating damages is always recoverable, provided it does not exceed the damages prevented or reasonably anticipated. (4 Rest. Torts, § 919; 15 Am.Jur., Damages, § 27, p. 423, § 147, pp. 554-555; 8 Cal.Jur., Damages, § 43, p. 783.) It is obvious that one by his wrongful act cannot cast on another the necessity of expending money to prevent or mitigate damages and escape liability for the reasonable cost thereof.

Judgment reversed, with directions to permit the parties to amend their pleadings as they may be advised in view of this opinion.

Goodell, Acting P. J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 19, 1950.