[No. 22019. *En Banc.* April 9, 1930.]

ALBERT BOYER *et al., Appellants,* v. THE CITY OF
TACOMA, *Respondent.*[1]

*John E. Gallagher,* for appellants.

*E. K. Murray, Leo Teats,* and *Bartlett Rummell,* for
respondent.

FRENCH, J.—This is an action for damages claimed
to have been suffered by appellants by reason of the
fact that the main sewer to which their property was
connected became clogged or overtaxed causing the
sewage to be deposited upon their property. The facts
are as follows:

Appellants are the owners of certain premises on
South Park avenue in Tacoma. In 1927 they built a
new house on these premises with a basement seven
and a half feet deep. By means of a connection run
from their basement, they were joined to the sewer
running through an alley some sixty feet distant from
their house, there being a drop of some four or five
feet between the basement and the alley. It is con-
ceded that this sewer connection was required by the
city under the terms of a city ordinance, and it is also

[1]Reported in 286 Pac. 659.

conceded that the connection as made in every way conformed to the ordinance, and was approved by the proper inspectors of the city.

On Thanksgiving Day, November 24, 1927, appellants having in the meantime moved into the property and occupying it as their home, this eight-inch main sanitary sewer became either clogged by some obstruction therein or overtaxed to such an extent that the sewage was forced back through the drain pipes of appellants into their basement covering the floor of the basement to a depth of approximately four feet. This occurred from time to time on some three or four occasions prior to April 3, 1928. By reason thereof appellants suffered substantial damage, not only by reason of the fact that many articles stored in the basement were destroyed, but also by reason of the fact that the premises became extremely foul and unsanitary, the uncontradicted testimony tending to show that the damages aggregated a considerable amount.

This action being commenced, the city denied negligence, and alleged contributory negligence, but no evidence of any kind was introduced tending to show any contributory negligence on the part of appellants. The eight-inch sanitary sewer which served the property of appellants and with which they were required to connect had been installed approximately twenty years prior to the time of the flooding of the premises. At the time of its installation, it was undoubtedly of ample size to serve all of the residents in the vicinity which it was expected to serve. However, by reason of the growth of the territory, it had become inadequate.

The city also alleged that the flooding of this property at this particular time had been by reason of sudden, unexpected and excessive rainfall, but the evidence tends to show that the normal rainfall for the month of November was 6.59 inches, and that during

that month 7.95 inches of rain actually fell. The rainfall during the months of January, February and March, the months during which the other floodings occurred, was considerably below normal.

The evidence introduced on behalf of the city also tends to show that inspectors were constantly watching this sewer during periods of heavy rainfall and that, at the time of the flooding which took place on Thanksgiving Day, the sewer was running to its full capacity, although there is evidence in the record showing that something was done to this sewer in March, 1928, and that thereafter there were no floodings.

The record in this case clearly indicates that, while there may have been, and probably were, at the times when the basement was actually flooded, rather heavy rains, no extraordinary storm conditions existed. As was heretofore stated, the record conclusively shows that the rainfall for the month of November was slightly above normal, and for the subsequent months considerably below normal.

The question, then, is squarely presented, Is the city liable under circumstances such as these for sewage discharged on appellants' property, they having been compelled by ordinance to connect with the sewer, the connection having been made in the manner approved by the city, and there being no negligence of any kind on their part?

It may be conceded at the outset that the authorities are divided on this question, many authorities holding that the city will not be liable for damages caused by the construction of a sewer of insufficient capacity, and others holding that, if the sewer system is not reasonably sufficient to take care of sewage and water reasonably expected to accumulate under ordinary circumstances, the municipality will be liable for result-

ant damages. McQuillin, Municipal Corporations, Vol. 6, § 2694.

One of the leading cases holding the city liable under circumstances such as those apparent in this case is *Tate v. City of St. Paul,* 56 Minn. 527, 58 N. W. 158, where the court said:

"The action is to recover damages arising from a sewer laid by defendant, and with which plaintiff had connected, as he had a right to do, setting the water in it back so that it flooded plaintiff's basements. The defect alleged in the sewer was that it was of insufficient capacity to carry off the water brought into it. The defect appears to have existed in the original plan for sewering that part of the city; that is, the city, in determining upon a system of sewers, determined upon the sizes required for the main sewer and for the lateral sewers running into it, and the size determined on for the former proved too small.

"The rule is uniformly conceded that for injuries wholly incidental to and consequential upon the exercise by a municipal corporation of the legislative or discretionary powers intrusted to it (as distinguished from its ministerial acts) no action will lie against it. Instances of the application of that rule are furnished by *Lee v. City of Minneapolis,* 22 Minn. 13, where the power exercised was by establishing the grade of a street under the charter, and *Alden v. City of Minneapolis,* 24 Minn. 254, where the city had established a system of grades for streets and sidewalks, and drains, gutters, catch-basins and sewers, and had constructed the streets, sidewalks, drains, and gutters, and partially completed the sewers.

"Some of the earlier cases do not clearly recognize the distinction between injuries incidental to the exercise of municipal legislative functions, and direct and positive wrongs — such for instance, as trespass — caused by it. The later and better authorities, however, recognize the distinction, and, while adhering to the rule that for the former no action will lie, hold that for the latter the party may recover. The distinction is apparent, though it is not clearly discussed in either

of the cases, of *O'Brien v. City of St. Paul,* 18 Minn. 176 (Gil. 163), and 25 Minn. 331; *Kobs v. City of Minneapolis,* 22 Minn. 159; and the *Lee* and *Alden* cases, above cited.

"But for a direct invasion of one's right of property, even though contemplated by, or necessarily resulting from, the plan adopted, an action will lie; otherwise, it would be taking private property for public use without compensation. Thus, if, in cutting a street down a grade, the soil of an abutting lot is precipitated into the cut, or if, in filling up to grade, the slope of the embankment is made to rest on private property, that is a direct invasion of property rights which cannot be justified, even though the plan adopted contemplates, or will necessarily produce, the result.

"Judge Dillon, in his work on Municipal Corporations (4th Ed., §§ 1047-1051), approves the rule, laid down in more recent decisions by some of our ablest courts, that if a sewer, *whatever its plan,* is so constructed as to cause a positive and direct invasion of private property, as by collecting and throwing upon it, to its damage, water or sewage which would not otherwise have flowed or found its way there, the corporation is liable. Conspicuous for their ability, among the cases referred to by him, are *Ashley v. Port Huron,* 35 Mich. 296, and *Seifert v. City of Brooklyn,* 101 N. Y. 136, 4 N. E. 321—each, the former, especially, a very interesting case. See, also, *Brayton v. Fall River,* 113 Mass. 218; *Lehn v. City and County of San Francisco,* 66 Cal. 76, 4 Pac. 965; *Weis v. City of Madison,* 75 Ind. 241. It is impossible to answer the reasoning of these cases, especially where the injury complained of constitutes a taking. That making one's premises a place of deposit for the surplus waters in the sewers in times of high water, or creating a nuisance upon them so as to deprive the owner of the beneficial use of his property, is an appropriation requiring compensation to be made, see *Weaver v. Mississippi & R. R. Boom Co.,* 28 Minn. 534, 11 N. W. 114."

That the city is liable as for trespass, and that building a sewer adequate in size at the time of its con-

struction and lack of actual acts of negligence in its maintenance and operation, is no defense, see *City of Louisville v. Leezer,* 143 Ky. 244, 136 S. W. 223, where the court stated:

"Under these authorities and others that might be cited, we think it may be regarded as fully established in this jurisdiction that when a municipal corporation undertakes to establish a system of sewers it must make provision for the increase that may naturally and reasonably be expected in the population of the city. The fact that the sewers when first constructed were adequate to meet the demands of conditions then existing will not relieve the city from responsibility if by growth and population they become inadequate for the use they were intended to supply. . . . The question is not whether the improvement was sufficient when it was built, but is—was it adequate when the injury complained of occurred. It results from these views that the principal defense relied on by the city is not tenable."

To the same general effect, see, *Weis v. City of Madison,* 75 Ind. 241; *Seaman v. City of Marshall,* 116 Mich. 327, 74 N. W. 484; *Lewenthal v. Mayor, etc., of New York,* 61 Barb. (N. Y.) 511; *City of Dixon v. Baker,* 65 Ill. 519.

That this court has indicated it will follow the more liberal rule as announced by these cases, see *Lennon v. Seattle,* 69 Wash. 447, 125 Pac. 770, a case where damages were obtained by reason of the breaking of a sewer and the resultant flooding of property by sewage. This court quoted with approval from certain cases as follows:

"In *Ashley v. Port Huron,* 35 Mich. 296, 24 Am. Rep. 552, a well-considered case, in which damage to private property was occasioned by a sewer, Judge Cooley, after citing and discussing numerous decisions, well said:

" 'It is very manifest from the reference to authori-

ties that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it is done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is appropriated in the one case as much as in the other.'

"In *Roberts v. Dover*, 72 N. H. 147, 153, 55 Atl. 895, a sewer case, the court, discussing the duties and liabilities of a municipal corporation, said:

" 'In *Rowe v. Portsmouth*, 56 N. H. 291, it was held that in maintaining a public sewer a city is bound to use that degree of care and prudence which a discreet and cautious individual would use if the whole loss or risk was to be his alone. The case renders unnecessary a discussion of the liability of a city or town, which builds a sewer under legislative authority, for defects in the plan adopted. When, having constructed a sewer, it connects it with other sewers and drains, overtaxing its capacity, and allows insoluble materials to accumulate in it and obstruct the flow of water, causing it to flow back upon private property, its liability for the resulting damage does not differ from that of an individual, who so unreasonably manages his property as to cause damage to the adjoining property of his

neighbor. The fact that it is a public corporation, performing certain public duties, does not exempt it from liability for negligence when performing a work not imposed upon it as a public agent, but voluntarily assumed by it under a legislative license. Having undertaken the construction and management of a system of sewerage for the local accommodation and convenience, its duties to individuals liable to be damaged thereby is measured by the same rule of ordinary care and prudence under the circumstances as would be applied if it were a private business corporation, partnership, or individual engaged in the same work.'

"In *King v. Kansas City,* 58 Kan. 334, 49 Pac. 88, the court said:

" 'The city cannot without liability collect sewage and filth and precipitate it upon the property of a citizen, even if the plan is devised in good faith and the best material is used in the construction. It is immaterial from which end of the sewer the discharge is made; the consequence and liability are necessarily the same. "Courts of the highest respectability have held that if the sewer, *whatever its* plan, is so constructed by the municipal authorities as to *cause a positive and direct invasion* of the plaintiff's private property by collecting and throwing upon it to his damage water or sewage which would not otherwise have flowed or found its way there, the corporation is liable." 2 Dillon, Municipal Corporations (4th ed.), § 1047. See, also, *Ashley v. Port Huron,* 35 Mich. 296; *Tate v. St. Paul,* 56 Minn. 527; *Seifert v. City of Brooklyn,* 101 N. Y. 136; *Lehn v. San Francisco,* 66 Cal. 76; *North Vernon v. Vogler,* 89 Ind. 77; *Orange v. Field,* 37 N. J. Eq. 600.' "

It is true that in other cases from this court statements have been made by way of argument which indicate that the contrary rule might be followed. See *Vittucci Importing Co. v. Seattle,* 72 Wash. 192, 130 Pac. 109. But the statements therein contained are not necessary to a decision of the case. The theory of all of the cases which we have examined, which hold

the city liable under circumstances such as we have outlined above, seems to be that the property owner is required to connect with the sewer; that he is not permitted to dispose of his sewage in any other way than the one way provided by the city; that he has no power or authority to remove the cause, or to in any way remedy the defect from which his injury arises; that the city alone has the power and the means to remedy the defective sewer or to replace an inadequate sewer, and that no person should be required to suffer an injury caused by an agency over which he has no control and over which the city has absolute control, and that if an injury is inflicted by such an agency he should be properly compensated therefor. We think this is the better rule and is well supported by both reason and authority.

Reversed for further proceedings in accordance with this opinion.

MITCHELL, C. J., MAIN, FULLERTON, TOLMAN, BEALS, MILLARD, and PARKER, JJ., concur.

HOLCOMB, J. (dissenting)—The negligence of the city either in construction, maintenance or operation was denied. It was wholly a question of fact, tried to the court, an experienced trier of facts, and decided in favor of the city. There was certainly no preponderant evidence against such finding. The cases cited as supporting the views of the majority do not apply to such case as we have before us.