[No. 27256. Department Two. December 2, 1938.]

VITO TOMBARI, *Respondent*, v. THE CITY OF SPOKANE, *Appellant*.[1]

*G. M. Ferris, Louis A. Conyard,* and *B. A. Farley,* for appellant.

*Clarke & Eklow,* for respondent.

[1]Reported in 84 P. (2d) 678.

MILLARD, J.—This action was brought to recover for damages alleged to have been sustained as a result of the depositing of sewage and water into plaintiff's basement from a public sewer. The cause was tried to the court, which found that, pursuant to ordinance and regulations of defendant, plaintiff connected his property to appellant's sewer; that the sewer installation required and approved by defendant was improper; that the sewer was of insufficient capacity to carry off the sewage and water conducted into it; and that, as the proximate result of defendant's negligence, plaintiff sustained damage in the amount of two hundred and ten dollars, including the expense of fifty-five dollars incurred in the construction of a manhole subsequent to the flooding of the basement. Judgment was entered accordingly. Defendant appealed.

It is the position of appellant that an extraordinary storm condition deposited an unusual amount of water in the vicinity of respondent's property, thereby overtaxing the sewer system, which was reasonably adequate to care for sewage and water reasonably expected to accumulate under ordinary circumstances; and that the contributory negligence of respondent in failing to properly install a back water trap, or check valve, was the proximate cause of the damage and precludes a recovery by respondent.

The facts are as follows:

Respondent owns a building, which was constructed in 1936, located at the northeast corner of Ninth avenue and Perry street, in the city of Spokane. In 1908, appellant installed the Perry street sewer, which is twenty inches in diameter from Seventh avenue to Ninth avenue. A sewer under Ninth avenue empties into the Perry street sewer, the diameter of which at this point is twenty-four inches.

It is the duty, under an ordinance of the city of Spokane, of appellant's health officer, where there is a public sewer in any street, to compel every owner within one hundred and fifty feet of the sewer to install a sufficient drain pipe, which shall connect his property to the nearest sewer. The health officer is also authorized to issue a permit for a cesspool or septic tank on premises in a sewer district, to drain plumbing fixtures or floors too low to be drained into the public sewer; but all other fixtures or floors on the premises are required to be drained through the sewer. The basement of respondent's property was too low to properly drain to the sewer.

Respondent called in July, 1936, at the office of appellant's sewer inspector and superintendent and requested permission to install a cesspool on his premises at Ninth avenue and Perry street. After inspection of respondent's property, one of the officers of appellant's sewer department informed the respondent that he would be required to connect with the Perry street sewer and that he would not be permitted to install a cesspool; that is, the city sewer superintendent and the city sewer inspector knew that respondent's basement was too low to properly drain to the sewer, yet they required him to make the sewer connection, which they later inspected and approved.

The basement drains and fixtures of respondent's property were, pursuant to the foregoing instructions, connected in July, 1936, to the sewer in Perry street. Neither the superintendent of sewers nor the inspector, who required respondent to use iron pipe instead of clay pipe he contemplated installing, informed respondent that a back water trap was necessary or would be required; nor does the city ordinance require the installation of a back water trap. The sewer connection was installed by a man who had constructed

sewers for more than twenty-five years. Doubtless, the installation of the connection was in the usual, customary, and workmanlike manner, as it was approved in all respects by appellant's sewer inspector.

Since the construction of the Perry street sewer in 1908, the city's population has greatly increased and many additional house connections—eight hundred and ninety-one in 1933—have been made to the sewer. Many of the streets sloping toward Perry street have been paved within the past few years, so that the surface waters feed into the catch basins, and the remainder of the surface water that does not run into the catch basins accumulates at the corner of Ninth avenue and Perry street, in front of respondent's property, where the street levels off and a pocket is formed at that intersection. Whenever it rains and the sewer becomes overloaded in that intersection, and often when it accumulates in the street, respondent's basement receives some of the water.

During the heavy rains in the early part of June, 1937, respondent complained to one of appellant's commissioners concerning the flowing of water—not in great quantities—into his basement. The commissioner suggested to respondent that he install a "back water trap." Respondent employed a plumber to install such a trap or check valve inside the basement. Whether the plumber did or did not advise respondent that the trap should be installed outside of the building, is not material. The plumber did advise respondent that a back water trap installed in the basement would protect the plumbing therein. There is some evidence that a back water trap installed outside the basement would not wholly prevent the backing up of sewage and water. It is clear, however, that respondent had no further serious difficulty subsequent to

installation of a trap following the damage of which he now complains.

On June 18, 1937, during a severe rain storm, respondent's basement was flooded by reason of the backing up of the water and sewage from the Perry street sewer. Great damage was inflicted to property three miles from respondent's property, it was testified, by the heavy rains. While there is evidence that the rainfall for the entire month of June was very heavy, there is evidence from which it is reasonably inferable that the total rainfall for the month of June would not have overtaxed the sewer if it had functioned properly.

During the twenty-four hour period of June 18, 1937, forty-seven hundredths of an inch of rain fell. The weather bureau records disclosed that this rainfall was not unusual or excessive; that it had been exceeded many times during other twenty-four hour periods. On June 17, 1937, the day before the rainfall which it is claimed caused the flooding of respondent's basement, five hundredths of an inch of rain fell. The testimony of one of the weather bureau officials was that, so far as the rainfall on June 18th and 19th, 1937, was concerned, "we have had rainfall that was greater than that on numerous occasions in the city of Spokane." On cross-examination, he testified that the rainfall on those two days was unusually heavy; ". . . it was unusual as compared to the normal." That is, the rainfall was such as had occasionally occurred in the past and which the city should reasonably have expected to occur again. Under such circumstances, if the sewers are so inadequate that they can not take care of the water, the municipality is not relieved from responsibility because the rainfall was extraordinary.

"Whatever the rule may be as to ordinary surface water or rainfalls, it is settled that a municipal cor-

poration is not liable for damages caused by an over-flow of its sewers occasioned by extraordinary rains or floods. However, although the rain doing the damage be of an extraordinary character, yet if the negligence of the city in failing to keep the sewers open concurred and contributed to the damage, then the city has been held liable. And if drains are so inadequate that they cannot take care of the water in case of an ordinary storm, the municipality is not relieved from responsibility because the rainfall was extraordinary." 6 McQuillin Mun. Corp., Revised (2d ed.), 1226, § 2868.

"In order to give a stream or body of water the character of an extraordinary flow it is not necessary that it should be the greatest flow within memory, but its character in this respect is to be tested by comparison with the usual volume of floods ordinarily occurring. The mere fact, however, that a rainfall was unusual for the particular season in which it occurs does not relieve the municipality from liability. A municipality, as a general rule, is required to guard against such floods or heavy rains as have occasionally occurred, and which may reasonably be expected to occur again, although their occurrence may be at irregular and wide intervals of time." 43 C. J. 1137, § 1895.

The respondent was compelled by ordinance to connect his property to the sewer. The sewer connection was made in the manner approved by the appellant city. While the overflow of the sewer was caused by unusual rainfall, the rainfall was such as had occasionally occurred in the past and which the appellant should reasonably have expected to occur again. The appellant failed in its duty to guard against such heavy rainfall as that which overtaxed the Perry street sewer, which, though adequate when constructed, had become of insufficient capacity in 1937 to carry off the water.

The case at bar is controlled by *Boyer v. Tacoma,* 156 Wash. 280, 286 Pac. 659, 70 A. L. R. 1342, in which

we held that a city is liable for the flooding of property required to be connected with a sewer which, though sufficient when constructed, had become of insufficient capacity to carry off the sewage conducted into it. We there said:

"It is true that in other cases from this court statements have been made by way of argument which indicate that the contrary rule might be followed. See *Vittucci Importing Co. v. Seattle,* 72 Wash. 192, 130 Pac. 109. But the statements therein contained are not necessary to a decision of the case. The theory of all of the cases which we have examined, which hold the city liable under circumstances such as we have outlined above, seems to be that the property owner is required to connect with the sewer; that he is not permitted to dispose of his sewage in any other way than the one way provided by the city; that he has no power or authority to remove the cause, or to in any way remedy the defect from which his injury arises; that the city alone has the power and the means to remedy the defective sewer or to replace an inadequate sewer, and that no person should be required to suffer an injury caused by an agency over which he has no control and over which the city has absolute control, and that if an injury is inflicted by such an agency he should be properly compensated therefor. We think this is the better rule and is well supported by both reason and authority."

*Woolworth Co. v. Seattle,* 104 Wash. 629, 177 Pac. 664, is cited by appellant in support of its theory that there can be no recovery for damages from flooding where the loss was due to the concurrent negligence of the city in the maintenance of sewers of insufficient capacity to carry off an average rainfall and the contributory negligence of the owner in failing to keep clean and in proper repair a back water valve required by ordinance in all cellar and basement drains.

In the case cited, a city ordinance required the installation of back water valves; while, in the case at

bar, there was an absence of such requirement. There is no ordinance, nor is there any regulation of any department, of appellant which required the respondent to install a back water trap to protect his basement. The sewer connection was approved by appellant in all respects. The back water trap was voluntarily installed by respondent inside of his building to protect the plumbing in the basement upon the suggestion of one of appellant's commissioners when respondent complained of water coming into his basement. In spite of that precaution, he sustained damages; and even if he had installed a back water trap outside of his building, it is not improbable, under the circumstances, that he would have sustained damages.

Error is next assigned on the allowance of the cost of fifty-five dollars for the installation of a back water trap. If appellant had required respondent to install, as it now insists he should have done, the back water trap at the time of the connection of his property to the sewer, that installation would have entailed very little expense. As appellant did not require that installation, which appellant insists would have prevented the damage, respondent should not be compelled to pay that which he would not have been required to expend if it had not been for appellant's failure to perform its duty in the first place. Respondent acted in good faith and endeavored to comply with all the requirements exacted by appellant. The court correctly awarded to him the amount he expended in the installation of the back water trap.

The judgment is affirmed.

STEINERT, C. J., BEALS, GERAGHTY, and SIMPSON, JJ., concur.