400 So.2d 23 (1981)
Robert McWHORTER, Individually, Diane McWhorter, His Wife, Individually, and Diane McWhorter As Next Friend of Patrick McWhorter, Minor Child, Michelle Renee McWhorter, Minor Child, and Darrin Robert McWhorter, Minor Child, Appellants,
v.
CITY OF NEW SMYRNA BEACH UTILITIES COMMISSION, Appellee.
No. 79-221.
District Court of Appeal of Florida, Fifth District.
May 6, 1981.
Rehearing Denied June 24, 1981.
*24 Judson I. Woods, Jr., and Jack W. Watson, III of Woods & Watson, Edgewater, for appellants.
Elsie T. Apthorp and Jacqueline R. Griffin, Orlando, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Appellants, the Robert McWhorter family, appeal from a final judgment after a jury trial denying recovery for damages to their home which resulted when sewage flooded their home.
While Mr. and Mrs. McWhorter were attending a convention in Orlando, they called home to check on their children and learned that there was "some water in the house." The parents returned home at about 1:00 a.m. to find water running out of the front door. Two small children were asleep covered by bedding saturated through capillary action with sewage water. To their horror, they discovered the source of the sewage water was their plumbing fixtures which had flooded the floor to a depth of two to three inches. Frantic, they incorrectly assumed the problem was a stoppage on their property. Early the next morning they called "Roto Rooter" for assistance. "Roto Rooter" determined the blockage was in the city system. City employees quickly cleared the lines, finding the blockage was caused by an accumulation of paper. The blockage was not in any way attributable to the McWhorters and was in the city system, not in the service line on the McWhorter property.
The home was supplied with sewer service by the appellee, City of New Smyrna Beach Utilities Commission. Residences within the city are required by ordinance to hook-up to the sewer system and a monthly charge is made for this service.
It is hard to imagine a more offensive and nauseating invasion of a home than the one suffered by this family. During the cleanup period, the house was infested with maggots, flies, and worms. Fecal matter was distributed throughout the house. The stench was unbearable. Carpets had to be removed and discarded; several feet of the cypress panelling on the walls mildewed. They were forced to move out of the house and reside for weeks in a rental apartment. Family relationships were strained while they attempted the cleanup. Furniture was ruined. The total out-of-pocket damages suffered by this family amounted to thousands of dollars and does not account for the untold labor and inconvenience to the family members. This family's love and enjoyment of their home was all but destroyed.
As incongruous and improbable as it may seem, the jury found no responsibility on the part of the City Utilities Commission.
The question raised by this appeal is whether appellants have a remedy and if so, was it properly pleaded and proved.
*25 Appellants attempted to plead estoppel, negligence, nuisance, trespass and contract in a single "catch-all" complaint. It was not pleaded in separate counts. The negligence theory includes res ipsa loquitur and strict liability as well as ordinary or simple negligence. The contract theories included express, as well as implied, contract. The court refused to give requested instructions on res ipsa loquitur, nuisance, contract, trespass or estoppel. The court submitted the case to the jury on the issue of simple negligence alone. Appellants made no attempt to prove that the sewage system was improperly designed or installed. Appellants raise as error the failure of the trial court to give instructions on the other theories. We agree that nuisance and estoppel on the facts here have no applicability.
"Res ipsa loquitur ... is a doctrine of extremely limited applicability. It provides an injured plaintiff with a commonsense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present." Goodyear Tire & Rubber v. Hughes Supply, Inc., 358 So.2d 1339, 1341 (Fla. 1978). The doctrine applies where:
(1) the instrumentality involved was within the exclusive control of the defendant at the time of the injury, both as to operation and inspection;
(2) the injury was not the result of voluntary action or contribution on the part of the plaintiff; and
(3) the accident would not have occurred had the defendant used due care.
Beach v. Halifax Hospital District, 360 So.2d 114 (Fla. 1st DCA 1978); Brooks v. Plant, 296 So.2d 71 (Fla. 2d DCA 1974).
The city contends that the first element prevents application of the doctrine here because it is impossible to control what enters a sewer system and many objects commonly found in sewers, such as paper, garbage, leaves, sanitary napkins and diapers can, and often do, cause blockages. The city has cited several cases from other jurisdictions which have held the doctrine inapplicable. Jivelekas v. City of Worland, 546 P.2d 419 (Wyo. 1976); Freitag v. City of Montello, 36 Wis.2d 409, 153 N.W.2d 505 (1967); Reich v. Salt Lake City Suburban Sanitary Dist. No. 1, 29 Utah 2d 125, 506 P.2d 53 (1973). Other courts, however, have been less reluctant to apply the doctrine to sewer back-up cases. See, e.g., Cummins v. City of West Linn, 21 Or. App. 643, 536 P.2d 455 (1975); Hull v. City of Griggsville, 29 Ill. App.3d 253, 330 N.E.2d 293 (1975).
Here, appellants had no control or voice in the operation, design or installation of the sewer system. Appellee installed the system, performed the maintenance and established the conditions and methods for tying into the sewer lines. It determined the size, number and locations of the system's lines, manholes and cleanouts. It also determined the number of homes which the sewer would serve and when and where the lines were cleaned and inspected. It knew blockages occur.
Appellants proved that the blockage was not attributable to them.[1] They have shown that the system flooded their house, an event that happens with such infrequency it can be assumed that it happened because appellee failed to use due care. See Hull v. City of Griggsville. They showed that the sewer system was in the exclusive control of the city. This exclusive control is not defeated by the fact that other persons have access to the system because the very purpose of the system is to carry away the collective wastes of the community. The city had exclusive control over the design, maintenance and operation of the system. Therefore, appellants carried their burden of establishing the elements of the doctrine of res ipsa loquitur. The burden should then shift to the city to show not simply that blockages occur, but why first a home must be flooded as a consequence of a blockage. If, in tying into a sewage system, a homeowner assumes the consequences of having his home flooded, the city *26 should be required to come forward and prove this fact. See Royal Furniture v. City of Morgantown, 263 S.E.2d 878 (W. Va. 1980). Res ipsa loquitur being applicable, the burden shifts to the city to explain how the house could flood if the system was properly designed and operated.
Appellants also raise as error the court's failure to give an instruction on an implied contractual condition.
Appellants contend they were compelled by ordinance to tie into the city's sewer system and to pay monthly charges for sewer service and therefore, the city impliedly contracted to guarantee trouble free service. The city points out that even if appellants' theory were to have an application in the present case, it was unsupported as the evidence did not show that the city expressly or impliedly guaranteed that its sewer system would be trouble free. If anything, the case law implies that the city may have a duty to provide merely an adequate and properly maintained system and not a perfect one. Tombari v. City of Spokane, 197 Wash. 207, 84 P.2d 678 (1938); Boyer v. City of Tacoma, 156 Wash. 280, 286 P. 659 (1930). While we agree that there is no obligation, expressed or implied for the city to guarantee a trouble free system, we disagree that the city can, with impunity, operate its sewers in both directions. When the city requires a homeowner to connect to its sewers, it forces an entrance into the home. There is implicit in such requirement and entrance an agreement to provide reasonable service, at least to the extent that sewage is removed and not injected. Sharon v. Connecticut Fire Insurance Co., 270 So.2d 900 (La. App. 1973).[2] While it may be anticipated that there will be interruptions in this service, there should be an implied agreement that the city will install and operate its systems so that the required sewer connection will not discharge all the neighborhood filth into an owner's home.
Bromer v. Florida Power & Light Co., 45 So.2d 658 (Fla. 1949), is instructive for there plaintiffs claimed the power company had failed to furnish a 220 volt current to its cold storage facility which resulted in the loss of stored meat. The court stated:
This Court should determine and give to the alleged implied contract `the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto.'
Id. at 660. The court then postulated whether the power company would be required to furnish service at an electrical current of 220 volts, continuously and in any and all events. The court concluded that it would not, holding that the obligation of the utility under such implied contract is to use reasonable care. Unfortunately, in the case before us, appellants requested that the jury be instructed in part that "plaintiff ... would receive service that would be trouble free." This instruction was incorrect; therefore, we agree that it was not error for the court to refuse this instruction.
When a city requires a homeowner to connect to its sewers, the purpose and intent of that requirement is to provide a sanitary method of disposing of that home's sewage discharge. While most homeowners would anticipate a possible blockage, few, if any, would anticipate a reverse flow. A requirement that a city design its system so that a home could not be flooded, or to come forward and explain why this is not practical should not be burdensome. We suspect that the reason there are so few cases in point in Florida illustrates that it is practical to design such a system or that few cities require their residents to carry such a loss.
REVERSED and REMANDED for new trial.
*27 ORFINGER, J., concurs without participation in oral argument.
SCHWARTZ, ALAN R., Associate Judge, dissents without opinion.
NOTES
[1] As stated previously, the blockage occurred in the city's main line (not appellants' line) and was the result of an accumulation of paper in the line.
[2] See also Romero v. Town of Welsh, 370 So.2d 1286, 1289 (La. App. 1979):

When a municipality or governing body undertakes the responsibility of constructing drains and sewers, it has a duty to provide for the adequate disposal of accumulated water and sewage.