66 P.3d 1111 (2003)
116 Wash.App. 547
John PRUITT and Marian Pruitt, husband and wife, and Sam Fletcher and Boni Fletcher, husband and wife, Appellants,
v.
DOUGLAS COUNTY, Respondent,
GTE, and Underground Specialties, Inc., Defendants.
No. 21055-3-III.
Court of Appeals of Washington, Division 3, Panel Six.
April 17, 2003.
*1113 Peter D. Poulson, East Wenatchee, for Appellants.
Robert R. Siderius, Jeffers, Danielson, Sonn & Aylward, Wenatchee, for Respondent. *1112
*1114 SWEENEY, J.
This is a suit by homeowners Sam and Boni Fletcher and John and Marian Pruitt against Douglas County for water damage arising from a June 1997 storm. Originally, the natural flow of water across certain land properties ultimately acquired by the homeowners herewould have been 15 cubic feet per second (c.f.s.) during a similar storm. But before the landowners built their homes, the county and others constructed roads which reduced the natural flow across their properties from such a storm to 1 to 2 c.f.s. After the homeowners built, the county made road improvements which channeled water from other natural drain basins across the homeowners' properties which resulted in a total flow of 10 c.f.s. during the storm. We conclude that these facts support a cause of action under the common enemy doctrine.[1]

FACTS
We have done our best to identify and articulate the factual backdrop for this case. And we have spelled it out here in a light most favorable to the nonmoving party as we must. See Hubbard v. Spokane County, 146 Wash.2d 699, 707, 50 P.3d 602 (2002). But it has been most difficult because the parties have provided only deposition excerpts some of which lack contextto support their respective legal positions.
In the 1930s, Douglas County constructed Eastmont Avenue and Badger Mountain Road. The subject properties are located at the base of one of several natural drain basins crossed by Eastmont Avenue and Badger Mountain Road. Appellant's Br. at 3 & Apps. 1, 2; Clerk's Papers (CP) at 37, 109-11, 160-62. Eastmont Avenue and Badger Mountain Road intercept some, but not all, of the water flowing downhill from these natural drain basins.
The East Wenatchee subdivision in which the affected properties are located was approved by Douglas County in 1958. The landowners' homes were built in 1967. In 1986, Sam and Boni Fletcher purchased their home. The pre-flood value was $160,000. John and Marian Pruitt bought the house next door in 1993. The pre-flood value was $164,000.
Apparently, if upland property had not been developed, a storm like the one in 1997 would have produced a water flow of 15 c.f.s. onto the landowners' lots. CP at 84-85. But sometime between 1965 and 1995, a private quarry road was built on Badger Mountain. CP at 70. The construction of the quarry and the private access roads altered the natural flow of the runoff so with the construction of Eastmont Avenue, Badger Mountain Road, and the private quarry access roads, the natural drainage to the landowners' properties was significantly reduced. So that if a storm of the same magnitude as the 1997 storm occurred, the landowners could expect only 1 to 2 c.f.s. to reach their properties from the natural drain area. CP at 41.
The county paved Upper Daniels Drive between 1995 and 1997. The construction apparently changed the slope of the road and added a ditch. As a result, the water was channeled onto the landowners' properties.
In June 1997, storm water flooded the landowners' lots at the rate of 10 c.f.s. Of the 10 c.f.s. that flowed onto the landowners' properties, only 10 percent was likely to have originated inside the landowners' natural drain basin. And approximately 90 percent of the water was likely to have originated outside of the landowners' natural drain basin. CP at 42.
The parties dispute the nature of the water flow. The landowners claim that Daniels Drive and Badger Mountain Road acted as a conduit to bring a portion of the water onto their properties. The county claims that the water was "diffuse surface water," that overflowed the drainage ditches. Resp't's Br. at 4.
*1115 In 1995, KCM Inc. prepared a Comprehensive Flood Hazard Management Plan. It concluded that the drainage facilities along Badger Mountain Road were inadequate to prevent flooding during major rainfall. The drainage facilities were designed in a way to contribute to uncontrolled drainage into urban areas. And the plan also concluded that a lack of county resources over many years had left the system functioning poorly, primarily due to the accumulation of sediment in culverts and ditches.
The landowners sued the county for damages based on negligence, strict liability, trespass, and inverse condemnation. The court granted the county's summary judgment motion.

DISCUSSION
STANDARD OF REVIEW
Our review here is de novo. Hubbard, 146 Wash.2d at 706, 50 P.3d 602. "`Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" Id. at 707, 50 P.3d 602 (quoting Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000)). A material fact is one upon which the outcome of litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997).
We view the evidence in the light most favorable to the nonmoving party. Hubbard, 146 Wash.2d at 707, 50 P.3d 602. "If reasonable minds can reach different conclusions, summary judgment is improper." Kalmas v. Wagner, 133 Wash.2d 210, 215, 943 P.2d 1369 (1997).
And also if the question is exclusively one of law, review is de novo. Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994).
COMMON LAW NEGLIGENCE AND TRESPASS
Trespass. A trespass claim requires "`an intentional or negligent intrusion onto or into the property of another.'" Borden v. City of Olympia, 113 Wash.App. 359, 373, 53 P.3d 1020 (2002) (quoting Mielke v. Yellowstone Pipeline Co., 73 Wash.App. 621, 624, 870 P.2d 1005 (1994)). Trespass can be shown by the discharge of water when the water ultimately reaches another's property. Hedlund v. White, 67 Wash.App. 409, 418 n. 12, 836 P.2d 250 (1992) (citing Buxel v. King County, 60 Wash.2d 404, 409, 374 P.2d 250 (1962)).
"Negligent trespass" requires proof of negligence (duty, breach, injury, and proximate cause). Gaines v. Pierce County, 66 Wash.App. 715, 719-20, 834 P.2d 631 (1992). We treat claims for trespass and negligence arising from a single set of facts as a single negligence claim. Pepper v. J.J. Welcome Constr. Co., 73 Wash.App. 523, 546-47, 871 P.2d 601 (1994).
Surface Water. Surface water is "waters of a casual or vagrant character having a temporary source, and which diffuse themselves over the surface of the ground, following no definite course or defined channel." Dahlgren v. Chicago, Milwaukee & Puget Sound Ry., 85 Wash. 395, 405, 148 P. 567 (1915). The runoff from surface waters is dissipated in two ways: by spreading broadly and diffusely or by following a natural drain course. Island County v. Mackie, 36 Wash.App. 385, 390, 675 P.2d 607 (1984). A natural drain is "that course, formed by nature, which waters naturally and normally follow in draining from higher to lower lands." King County v. Boeing Co., 62 Wash.2d 545, 550, 384 P.2d 122 (1963).
Common Enemy Doctrine. The common enemy doctrine "provides that surface water is `an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others.'" DiBlasi v. City of Seattle, 136 Wash.2d 865, 875, 969 P.2d 10 (1998) (quoting Cass v. Dicks, 14 Wash. 75, 78, 44 P. 113 (1896)). In its strictest form, under the common enemy doctrine, if the landowner "`in the lawful exercise of his right to control, manage or improve his own land, finds it necessary to protect it from surface water flowing from higher land, he may do so, and if damage thereby results to another, it is damnum absque injuria [injury without redress].'" Halverson v. Skagit County, 139 *1116 Wash.2d 1, 15, 983 P.2d 643 (1999) (quoting Cass, 14 Wash. at 78, 44 P. 113).
There are, however, three recognized grounds for liability despite the common enemy doctrine: (1) blockage of a natural drain or waterway; (2) collection and discharge of water onto adjoining lands in quantities greater than, or in a manner different from, its natural flow; and (3) failure to exercise due care in preventing unnecessary damage. Currens v. Sleek, 138 Wash.2d 858, 866, 983 P.2d 626, 993 P.2d 900 (1999) (refusing to abandon the common enemy doctrine altogether in favor of the reasonable use rule); Borden, 113 Wash.App. at 367-68, 53 P.3d 1020.
The county is not liable under the common enemy doctrine for flood damage caused by its road improvements, unless, in the course of making those improvements, it blocked a natural drain or waterway, collected and discharged water onto neighboring land, or failed to exercise due care in preventing unnecessary damages. See Currens, 138 Wash.2d at 867-68, 983 P.2d 626.
Artificial Collection/Discharge. Surface waters may not be "`"artificially collected and discharged upon adjoining lands in quantities greater than or in a manner different from the natural flow thereof."'" Halverson, 139 Wash.2d at 18-19, 983 P.2d 643 (emphasis omitted) (quoting Pls.' Resp. Br. at 46 (quoting Colella v. King County, 72 Wash.2d 386, 390, 433 P.2d 154 (1967))). This prohibits the creation of an unnatural conduit, but permits the direction of diffuse surface waters into preexisting waterways and drain ways. Currens, 138 Wash.2d at 862, 983 P.2d 626.
The rule is set out in Burton v. Douglas County.[2] Just like here, the county in Burton asserted that the road did not convey surface waters by artificial means and deposit them on the landowner's property. Burton v. Douglas County, 14 Wash.App. 151, 153, 539 P.2d 97 (1975). And, like here, the county claimed that since there was no evidence that it was negligent in the construction of its road work, it could not be held liable. Id.
In Burton, the court found that the road constructed by the county was an artificial collection because the road "acted as an artificial drain, collecting, channeling, and depositing" surface water runoff from a hillside through a culvert onto the plaintiff's property. Id. at 154, 539 P.2d 97. The court noted:
Whether or not the road was negligently constructed is immaterial. The proximate cause of the damage was the initial wrong that occurred because Douglas County's road acted as a channel to collect and divert water from its natural course and ultimately discharge surface water upon Burton's property to his injury. There was no dispute among the experts who testified that the road acted to channel the surface waters during the storm.... But for the existence of the road, the surface waters would naturally have been dispersed instead of being collected, channeled and discharged upon Burton's property.
Id. at 155-56, 539 P.2d 97 (footnotes omitted).
The collection and discharge rule was adopted in DiBlasi v. City of Seattle: "a municipality may be liable for damages to an adjoining landowner's property caused by a street which acts to collect, channel and thrust water in a manner different from the natural flow." DiBlasi, 136 Wash.2d at 879, 969 P.2d 10. The DiBlasi decision recognized that:
there is not a valid distinction between a culvert or gutter that acts to collect, concentrate and channel surface water in a manner different from the natural flow, and a street which causes damage to an adjoining property owner by acting in the same manner. Liability should result in each case.
Id.
CAUSATION
Under the facts presented here, earlier county improvements actually reduced the natural drainage across the landowners' property. So the question is then whether *1117 the county can with impunity increase the flow of water across the landowners' property so long as it does not increase it beyond the original natural drainage of 15 c.f.s. And we conclude it may not.
Typically, the finder of fact must "compare the amount of surface water that would naturally reach the [landowners'] properties with the amount that reaches the properties after the changes to the road." Ripley v. Grays Harbor County, 107 Wash. App. 575, 582, 27 P.3d 1197 (2001). Here, after these homes were built, the county artificially collected and discharged water in a greater quantity or in a different manner than before the improvements to Upper Daniels Drive. The homeowners' showed that before the improvements the flow would have been 1 to 2 c.f.s. CP at 41. If proved, this is a sufficient showing to support a cause of action for the artificial collection and discharge of water. See Halverson, 139 Wash.2d at 18-19, 983 P.2d 643.
Here, 90 percent of the water that actually reached the landowners' properties was not the same water that would have reached the landowners' property naturally. The causation issue is the diversion of a natural flow from other drain areas onto the landowners' property.
The common enemy rule allows these landowners the right to protect themselves from naturally flowing water. At the time these homes were built that was 1 to 2 c.f.s. assuming a storm of the magnitude of the 1997 storm. But now the water reaching the landowners' properties is both qualitatively and quantitatively different from the natural flow.
Due Care. The landowners next argue that the county failed to use due care in the collection and discharge of this water in any event. The due care exception requires that property owners use due care by acting in good faith and by avoiding unnecessary damage to the property of others. Currens, 138 Wash.2d at 865, 983 P.2d 626. Here, the county may improve land in any manner allowed by law. But it must limit any harm caused by changes in the flow to that which is reasonably necessary. Id. at 867, 983 P.2d 626.
The question is whether the county minimized any unnecessary impacts upon adjacent properties. Id. at 865, 983 P.2d 626. The homeowners must show that the county either acted in bad faith or unnecessarily caused surface water damage. Id. And "[t]o prove bad faith, one must show `"actual or constructive fraud"' or `"a neglect or refusal to fulfill some duty ... not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."'" Ripley, 107 Wash.App. at 584, 27 P.3d 1197 (quoting Bentzen v. Demmons, 68 Wash.App. 339, 349 n. 8, 842 P.2d 1015 (1993) (quoting State v. Sizemore, 48 Wash. App. 835, 837, 741 P.2d 572 (1987))). Here, there is no showing of such a motive or intent.
The showing here is that 90 percent of the water that actually reached the landowners' properties came from outside of the natural drain basin. A jury could then find that the unnatural movement of water from outside of the landowners' drainage area caused by the roads unnecessarily impacted these landowners. See Currens, 138 Wash.2d at 866-67, 983 P.2d 626.
Negligent Maintenance. The landowners also assert a general negligence claim for "duties to design, maintain, and otherwise control the public rights-of-way and other public facilities." CP at 322.
Municipalities in Washington routinely assume the landownership and ministerial act of maintaining residential drainage systems. Phillips v. King County, 136 Wash.2d 946, 965, 968 P.2d 871 (1998); Sigurdson v. City of Seattle, 48 Wash.2d 155, 159, 292 P.2d 214 (1956). Where the municipality assumes the maintenance duties and control over the drainage system, it has a duty to exercise reasonable care in the repair and maintenance of the system. Sigurdson, 48 Wash.2d at 159-62, 292 P.2d 214; Tombari v. City of Spokane, 197 Wash. 207, 211-12, 84 P.2d 678 (1938); Boyer v. City of Tacoma, 156 Wash. 280, 287-88, 286 P. 659 (1930); Hayes v. City of Vancouver, 61 Wash. 536, 538, 112 P. 498 (1911). This duty exists regardless of who constructed the drainage system. Phillips, 136 Wash.2d at *1118 966, 968 P.2d 871; Sigurdson, 48 Wash.2d at 161, 292 P.2d 214.
But the county must have knowledge, either actual or constructive of the drainage defect, inadequacy, or obstruction. Sigurdson, 48 Wash.2d at 162, 292 P.2d 214; Tombari, 197 Wash. at 211-12, 84 P.2d 678; Georges v. Tudor, 16 Wash.App. 407, 411-12, 556 P.2d 564 (1976). Once the county has notice of the defective condition or inadequacy, however, it is for the trier of fact to determine whether the county acted negligently. Sigurdson, 48 Wash.2d at 163, 292 P.2d 214.
Here, the landowners showed that the county's storm drains were in a state of general disrepair. And the county knew it. CP at 166-68 (Douglas County Comprehensive Flood Hazard Management Plan). The county claims, nonetheless, that this claim is speculative because the landowners fail to show damage would have been avoided by deeper ditches. And that may ultimately be their undoing at trial. But at the summary judgment stage of this proceeding, the landowners made out a prima facie case of duty, breach, and damage. See Hartley v. State, 103 Wash.2d 768, 777, 698 P.2d 77 (1985). The proximal relationship between the failure to repair and maintain these facilities and their damage is for the trier of fact. See Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 935, 653 P.2d 280 (1982).
The trial court should not have dismissed their negligence and trespass claim.
INVERSE CONDEMNATION
An action for the government's taking or damaging of land is grounded in the Washington State Constitution, which provides: "No private property shall be taken or damaged for public ... use without just compensation having been first made." CONST. art. I, § 16 (amend.9). To establish a claim for inverse condemnation, the landowner must establish the elements of: "(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." Phillips, 136 Wash.2d at 957, 968 P.2d 871.
"A `taking' occurs when government invades or interferes with the use and enjoyment of property, and its market value declines as a result." Gaines v. Pierce County, 66 Wash.App. 715, 725, 834 P.2d 631 (1992). But an aggrieved landowner must show more than a tortious interference with the use or enjoyment of his property. Borden v. City of Olympia, 113 Wash.App. 359, 374, 53 P.3d 1020 (2002). A flooding may be the basis for an inverse condemnation as an "invasion" of property if the invasion is "permanent or recurring" or involves "`a chronic and unreasonable pattern of behavior by the government.'" Gaines, 66 Wash.App. at 725-26, 834 P.2d 631 (quoting Orion Corp. v. State, 109 Wash.2d 621, 671, 747 P.2d 1062 (1987)).
A takings claim can be proven by (1) the "diversion of waters from the direction in which they would naturally flow and onto the land of plaintiff" or (2) where "the amount of water has been increased." Wilber Dev. Corp. v. Les Rowland Constr., Inc., 83 Wash.2d 871, 875, 523 P.2d 186 (1974), overruled on other grounds by Phillips, 136 Wash.2d 946, 968 P.2d 871. The damage to the property must be permanent to be compensable. Wilson v. Key Tronic Corp., 40 Wash.App. 802, 816, 701 P.2d 518 (1985).
Here, the landowners' property had a zero market value after the flood. This is based on: (1) no sale potential in the open market due to its flood-damaged condition and (2) its location with potential for future flooding. CP at 204-13, 252-56. And, assuming the road will not be changed, the landowners' properties will continue to be a dumping ground for neighborhood water.
The landowners have then presented a genuine issue of fact as to their inverse condemnation claim.
ATTORNEY FEES AND COSTS
Without much citation to authority or sufficient factual basis, the landowners ask for fees and costs. "A party may recover attorney fees and costs on appeal when granted by applicable law." Oregon Mut. Ins. Co. v. Barton, 109 Wash.App. 405, 418, 36 P.3d 1065 (2001); RAP 18.1.
*1119 The landowners do set forth a separate section, albeit in one sentence, with citation to RAP 18.1 (procedure for requesting fees) and RAP 14.3 (allowable costs). But they do not provide argument or the underlying grounds for the grant of fees as required by RAP 18.1(b). The procedure outlined in RAP 18.1(b) is mandatory. Phillips Bldg. Co. v. An, 81 Wash.App. 696, 705, 915 P.2d 1146 (1996); Austin v. U.S. Bank of Wash., 73 Wash.App. 293, 313, 869 P.2d 404 (1994). And the showing here is not enough. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998).
The request for fees is therefore denied.
The summary judgment in favor of Douglas County is reversed.
SCHULTHEIS J., and KURTZ, J., concur.
NOTES
[1] The common enemy doctrine has governed the law of surface water in Washington since 1896. Cass v. Dicks, 14 Wash. 75, 44 P. 113 (1896). Under the common enemy doctrine, landowners who alter the flow of surface water are shielded from liability only if they exercise their rights with due care by acting in good faith and avoiding unnecessary damage to the property of others. Currens v. Sleek, 138 Wash.2d 858, 983 P.2d 626, 993 P.2d 900 (1999).
[2] Burton v. Douglas County, 14 Wash.App. 151, 539 P.2d 97 (1975).